HARTFORD ACCIDENT & INDEMNITY COMPANY *v.* SOUTHERN PACIFIC COMPANY ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 45: Argued December 2, 1926.—Decided February 21, 1927.

1. Where a shipowner sues in admiralty to limit his liability from negligent management of his vessel to the value of the vessel and pending freight, the proceeding does not necessarily terminate if his prayer is denied, but the Court may thereupon proceed to adjudicate all the claims coming from the accident, whether independently cognizable in admiralty or not, after the manner of a court of equity, and render judgment both *in rem,* and against the owner *in personam.* P. 213.

2. A stipulation *ad interim* in such proceedings takes the place of the vessel and freight, and even when the shipowner's application to limit liability is denied, the stipulator may be required to pay their value into court for application to allowed claims and costs. P. 218.

3 F. (2d) 923, affirmed.

CERTIORARI (267 U. S. 590) to a decree of the Circuit Court of Appeals which affirmed a decree of the District Court requiring a stipulator for value in a limitation of liability proceeding to pay into court the value of its principal's vessel and pending freight.

*Mr. John Neethe,* with whom *Mr. Edwin C. Brandenburg* was on the brief, for petitioner.

The Act was passed for the purpose of encouraging ship owners and should be liberally construed in their favor. *La Bourgoyne,* 210 U. S. 95. In *Norwich v. Wright,* 13 Wall. 104, it was held to apply to collision cases. In *Providence S. S. Co.* v. *Hill Mfg. Co.,* 109 U. S. 578, it was extended to cover loss by fire. In *Butler* v. *Boston S. S. Co.,* 130 U. S. 527, it was extended to personal injuries, as well as to injuries of property.

The *Bolikow* was sold after the disaster for the sum of $250. This was the *res* against which the appellee and other claimants intervening could have proceeded by a libel *in rem.* It was all that was within the jurisdiction of the court. Believing that it was not liable at all, the Oil Company filed its petition and the *ad interim* stipulation adding to the $250 the freight earned on the last voyage, amounting to about $11,000.

The precise question now before this Court has never been determined. Distinguishing *The Virginia,* 266 Fed. 437. A proceeding for limitation of liability is a proceeding *in rem;* or an equitable proceeding *in rem.* After limitation of liability is denied, there ceases to be a *res* in court and the proceeding should either be dismissed or cease to be one *in rem* and become a proceeding *in personam,* with no more jurisdiction left in the court than to ascertain, as in a libel *in personam,* the amount due each claimant, or to have the court refer this question to a commissioner for a like purpose. *In re Smith & Sons, Inc.,* 193 Fed. 395; *In re Pacific Mail S. S. Co.,*

130 Fed. 76; *The Santa Rosa,* 249 Fed. 160; *The Titanic,* 204 Fed. 295.

To hold that the court could still proceed to adjudicate the rights of the various parties would necessitate a holding that the rights of the intervening claims against the ship owner, whether sounding in contract or tort, and whether arising in admiralty or not, can be adjudicated in a federal court, though they may arise between citizens of the same State. Such holding would mean that, though each claimant as against the owner is entitled to a jury, the limitation of liability act would deprive him of such privilege.

*Mr. Roscoe H. Hupper,* with whom *Messrs. W. T. Armstrong* and *W. E. Cranford* were on the brief, for respondents.

The court has the right to decree the payment into court of the appraised value of the barge and her pending freight for such disposition of it as the court could legally have made of it had it originally been paid into the registry of the court and not been bailed out. *The Benefactor,* 103 U. S. 239; Rev. Stats. §§ 4282–4285 inc. The principle that there occurs a complete and irrevocable surrender of the actual property to the court is frequently expressed. *Prov. S. S. Co.* v. *Hale Mfg. Co.,* 109 U. S. 578; *Re Morrison,* 147 U. S. 14; *The H. F. Dimock,* 52 Fed. 598; *The Wanata,* 95 U. S. 600; *United States* v. *Ames,* 99 U. S. 35; *The City of Norwich,* 118 U. S. 468.

It is true that in the earlier cases, such as *The Republic* and *The Eureka,* as stated in *The Titanic,* 204 Fed. 295, the doctrine "is assumed," though not asserted; but when the question came up squarely it was definitely decided by the lower courts that in a limitation proceeding where exemption from liability as well as a right to limit liability is asserted, the court has complete

and exclusive jurisdiction of the entire controversy and may proceed to render a final decree for the full amount of damages in favor of the claimant even though limitation of liability is denied. The court, continuing to have jurisdiction over the proceeding for the purpose of doing justice by the claimants, does not lose control of the *res,* that is, the vessel and its pending freight, which has been placed in court by the petitioner in order to secure the proceeding. Benedict, Admiralty, 4th ed., § 527. *The Lydia,* 1 Fed. (2d) 69.

It is an action in the nature of a creditor's bill for the purpose of securing a concourse of the creditors on account of a particular accident in which the vessel and her pending freight are impounded for the purpose of being surrendered to such creditors in the event they establish claims against the owner of the impounded fund. The owner of the fund makes the issues to be litigated in the action by his petition and consequently defines the measure of possible recovery against the fund and against himself. It would seem that the right against the fund should be held to be co-extensive with the limits of possible recovery fixed by the petition. *The Garden City,* 26 Fed. 771; *Dowdell* v. *District Ct.,* 139 Fed. 445; *Providence S. S. Co.* v. *Hill Mfg. Co.,* 109 U. S. 578; *Black* v. *S. P. R. Co.,* 39 Fed. 565; *Oregon R. R. & Nav. Co.* v. *Balfour,* 90 Fed. 295; *Butler* v. *Boston S. S. Co.,* 130 U. S. 527.

The whole proceeding is in reality an equitable action *in rem* and *in personam*—an equitable suit to the extent that the admiralty court, having the broadest of powers to do exact justice between the parties, may take any such action in the case as justice demands,—an action *in rem* in so far as the judgments reach the fund placed in court by the petitioner, and *in personam* in so far as the personal liability of the petitioner is established or found not to exist. *Re Morrison, supra; Dowdell* v. *Dist.*

*Ct., supra; Re Pacific Mail S. S. Co.*, 130 Fed. 76; *The Annie Faxon*, 75 Fed. 312; Benedict, Admiralty, 4th ed., § 519.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

The National Oil Transport Company, the owner of wooden oil tank barge *Bolikow*, filed a libel in the United States District Court for the Southern District of Texas against the Southern Pacific Company, alleging: that the *Bolikow*, made fast to a dock in the harbor of the city of Galveston, was laden with a cargo of crude oil from which a large part had been discharged; that an explosion took place in one of her tanks, causing fire; that *El Occidente*, a steamer of the Southern Pacific Company, was injured by the fire; that the value of the barge after the explosion and fire was $250 and her pending freight at the time did not exceed $11,076.85; that the damage to the *Occidente* was due not to the *Bolikow* but to her own negligent management and the lack of power of the tug which attempted to take her to a safe place; that the claims of the owners of the *Occidente* were in excess of $484,000; and that there were claims by persons on the barge for death and injuries from the fire, amounting to $50,000 in one case, and $15,000 in another. The owner contested its liability and that of its barge *Bolikow* to any extent whatever; but in case its liability were established, claimed and sought the benefit of the statutory limitation of its liability. R. S. 4283, 4284, and 4285.

Pursuant to the court's order, the National Oil Transport Company and the Hartford Accident & Indemnity Company executed an *ad interim* stipulation that the former, as principal, and the latter, as surety, undertook in the sum of $11,326.85, with interest, that the Transport Company would file a bond or stipulation for the limitation of its liability as owner of the barge *Bolikow*, exe-

cuted in due form of law for the value of the Transport
Company's interest in the barge and her pending freight,
with six per cent. interest thereon from December 23,
1920, within ten days after such values were determined
by appropriate proceedings in the court and an order
fixing such value was entered therein, and that pending
the filing of the formal stipulation, the *ad interim* under-
taking should stand as security for all claims in the
proceeding.

The court then made an order directing the issuing of
a monition to claimants against the vessel and her owner
growing out of the explosion, and an injunction. With-
out further action as to fixing the value of the barge or
its pending freight, the claimants came in, the cause pro-
ceeded to a final decree, after a report by a commissioner,
the petition for limitation of liability was denied, the
claims in whole or in part were allowed, and the decree
proceeded:

"And it further appearing to the Court that neither the
petitioner nor its stipulator nor any other party or interest
has moved for or caused any re-appraisal or appraisal of the
petitioner's interest in said barge and her pending freight,
or either of them or caused any order to be entered by
the Court fixing such value except as was done by the
approval and filing of said *ad interim* stipulation as afore-
said and the issuance and publication of a monition there-
on as aforesaid, and it further appearing to the Court
that no bond for value other than said *ad interim* stipu-
lation has been filed herein by the petitioner and it ap-
pearing from the evidence introduced on the trial hereof
and the Court here and now finding that the value of the
petitioner's interest in said barge at the termination of
her voyage is $250, and that the value of the petitioner's
interest in the pending freight of said barge at the ter-
mination of said voyage is $11,076.85, and that the total
value of said petitioner's interest in said barge and her

pending freight at the termination of her said voyage is $11,326.85; it is therefore ordered and decreed that unless this decree be satisfied or an appeal be taken therefrom within the time limited by law and the rules and practice of this Court, the stipulator for value will cause the said petitioner to pay into Court the sum of $11,326.85, the amount of the value of the petitioner's interest in the said barge and pending freight at the termination of her said voyage, with 6 per cent. interest from December 23, 1920, to be applied in payment of the costs of Court, the remainder to be pro-rated among the respective claimant-respondents in proportion to the amounts of the decrees entered in their favor herein, or show cause why execution should not issue therefor, against goods, chattels and lands of the stipulator for value."

The Hartford Indemnity Company, the stipulator, appealed from this decree, which the Circuit Court of Appeals of the Fifth Circuit affirmed. 3 Fed. (2nd) 923. We brought the case here by certiorari. 267 U. S. 590.

The contention of the petitioner is, that it could become liable only in the event limitation of liability was granted, and, as that relief was denied, the stipulation ceased to be effective; that upon a denial of a limitation of liability there ceased to be a *res* in court; that the proceeding was no longer one *in rem;* and that suits for the claims against the ship owner must be conducted in a court having jurisdiction on other grounds.

It is surprising that no case has ever arisen in which the question here mooted has been directly decided, though the effect of a decision refusing limitation has been the subject of discussion in *The Titanic,* 204 Fed. 295, and in *The Virginia,* 266 Fed. 437, 439. See also *Dowdell* v. *U. S. District Court,* 139 Fed. 444; *In re Jeremiah Smith & Sons,* 193 Fed. 395; *The Santa Rosa,* 249 Fed. 160.

The history and proper construction of the Limitation of Liability Act of 1851, 9 Stat. 635, now embodied in

Revised Statutes, §§ 4282 to 4287, are shown in a series of cases in this Court, the chief of which is the *Norwich Company* v. *Wright,* 13 Wall. 104. Further consideration to this subject was given by the Court in *The Benefactor,* 103 U. S. 239; in the *Providence & New York Steamship Company* v. *Hill Manufacturing Company,* 109 U. S. 578; in the *City of Norwich,* 118 U. S. 468, 503; in *The Scotland,* 118 U. S. 507; in *Butler* v. *Boston & Savannah Steamship Company,* 130 U. S. 527; in *In re Morrison,* 147 U. S. 14, 34; in *The Albert Dumois,* 177 U. S. 240; in *The Hamilton,* 207 U. S. 398, and in the *La Bourgogne,* 210 U. S. 95.

These decisions establish, first, that the great object of the statute was to encourage shipbuilding and to induce the investment of money in this branch of industry, by limiting the venture of those who build the ship to the loss of the ship itself or her freight then pending, in cases of damage or wrong, happening without the privity or knowledge of the ship owner, and by the fault or neglect of the master or other persons on board; that the origin of this proceeding for limitation of liability is to be found in the general maritime law, differing from the English maritime law; and that such a proceeding is entirely within the consitutional grant of power to Congress to establish courts of admiralty and maritime jurisdiction, *Norwich* v. *Wright,* 13 Wall. 104; that to effect the purpose of the statute, Admiralty Rules Nos. 54, 55, 56 and 57 (now 51–54; see 254 U. S. Appendix, p. 25,) were adopted, by which the owner may institute a proceeding in a United States District Court in admiralty against one claiming damages for the loss, in which he may deny any liability for himself or his vessel, but may ask that if the vessel is found at fault his liability as owner shall be limited to the value of the vessel, as appraised after the occurrence of the loss, and the pending freight for the voyage; that these damages shall include, damages to

goods on board, second, damages by collision to other vessels and their cargoes, and, third, any other damage or forfeiture done or incurred; that all others having similar claims against the vessel and the owner may be brought into concourse in the proceeding, by monition, and enjoined from suing the owner and vessel on such claims in any other court; that the proceeding is equitable in its nature and is to be likened to a bill to enjoin multiplicity of suits, *Providence Steamship Co.* v. *Hill Manufacturing Company,* 109 U. S. 578; that, by stipulation after appraisement, the vessel and freight may be released and the stipulation be substituted therefor; that, on reference to a commissioner and the coming in of his report, it shall be determined, first, whether the owner and his vessel are liable at all; second, whether the owner may avoid all liability except that of the vessel and pending freight; third, what the amount of the just claims are, and, fourth, how the fund in court should be divided between the claimants. The cases show that the court may enter judgment *in personam* against the owner as well as judgment *in rem* against the *res* or the substituted fund, *City of Norwich,* 118 U. S. 468, 503; that the fund is to be distributed to all established claims to share in the fund to which admiralty does not deny existence, whether they be liens in admiralty or not, *The Hamilton,* 207 U. S. 398, 406; and that they may include damages from a collision, from personal injuries, *Butler* v. *Boston Steamship Co.,* 130 U. S. 527, or for wrongful death, if arising under a law of Congress, a State of the Union or a foreign state, which is applicable to the owner and the vessel. *The Bourgogne,* 210 U. S. 95, 138.

It is quite evident from these cases that this Court has by its rules and decisions given the statute a very broad and equitable construction for the purpose of carrying out its purpose and for facilitating a settlement of the whole controversy over such losses as are comprehended within

it, and that all the ease with which rights can be adjusted in equity is intended to be given to the proceeding. It is the administration of equity in an admiralty court. *Dowdell* v. *United States District Court,* 139 Fed. 444, 445. The proceeding partakes in a way of the features of a bill to enjoin a multiplicity of suits, a bill in the nature of an interpleader, and a creditor's bill. It looks to a complete and just disposition of a many cornered controversy, and is applicable to proceedings *in rem* against the ship as well as to proceedings *in personam* against the owner, the limitation extending to the owner's property as well as to his person. *The City of Norwich,* 118 U. S. 468, 503.

With this general view of the statute, we come to the contention of the petitioner in this case. It says that the owner only brings the suit to limit his liability, if it exists, to the vessel and the freight for the voyage. If he fails in his purpose and does not establish the limitation, no progress can be made in behalf of the defendant or the claimants in the collection of what has been found due them; and, because he has lost that feature of his suit against them, the case must be dismissed. This is said to follow, even though it is apparent that by virtue of the owner's suit and the injunction he secured he has delayed and prevented his creditors from resorting to any other forum to vindicate their rights against him. In this view the defendant and the claimants thus may not thereafter share in the fund or *res,* the deposit of which for the benefit of the defendants and the claimants was the principal ground and the indispensable condition of the proceeding. The parties, it is argued, must thereafter be remitted to a common law or equity court of the State to secure their rights, unless diverse citizenship or the admiralty character of their claims entitles them to resort to, or remain in, a federal court.

Surely the admiralty court, in view of the large powers intended to be given it in such a proceeding, is not so help-

less as this. So to hold would be to hold that, unless the petitioner wins, the court does not have power to administer justice. There is nothing in the statute, nor in the rules, that requires so feeble a conclusion. The jurisdiction of the admiralty court attaches *in rem* and *in personam* by reason of the custody of the *res* put by the petitioner into its hands. The court of admiralty, in working out its jurisdiction, acquires the right to marshal all claims, whether of strictly admiralty origin or not, and to give effect to them by the apportionment of the *res* and by judgment *in personam* against the owners, so far as the court may decree. It would be most inequitable if parties and claimants, brought in against their will and prevented from establishing their claims in other courts, should be unable to perfect a remedy in this proceeding promptly, and should be delayed, until after the possible insolvency of the petitioner, to seek a complete remedy in another court, solely because the owner can not make his case of personal immunity. 1 Benedict's Admiralty, 5th ed., 488. If Congress has constitutional power to gather into the admiralty court all claimants against the vessel and its owner, whether their claims are strictly in admiralty or not, as this court has clearly held, it necessarily follows as incidental to that power that it may furnish a complete remedy for the satisfaction of those claims by distribution of the *res* and by judgments *in personam* for deficiencies against the owner, if not released by virtue of the statute.

Such a conclusion is quite in accord with the rules governing equity procedure in general conformity with which this limitation of liability statute has been construed and enforced. Where a court of equity has obtained jurisdiction over some portion of a controversy, it may and will in general proceed to decide all the issues and award complete relief, even where the rights of parties are strictly legal and the final remedy granted is of the kind

which might be conferred by a court of law.  1 Pomeroy's Equity Jurisdiction, 4th ed., §§ 181 and 231; *United States* v. *Union Pacific Railway,* 160 U. S. 1, 52.  See also Equity Rule 10, amended May 4, 1925, 268 U. S. 709, Appendix.  Of course, this equitable rule enlarging the Chancellor's jurisdiction, in order to completely dispose of the cause before him, does not usually apply in an admiralty suit.  *Grant* v. *Poillon,* 20 How. 162; *Turner* v. *Beacham,* Taney's Reports 583, Federal Case No. 14252; *The Pennsylvania,* 154 Fed. 9; *The Ada,* 250 Fed. 194. But this limitation of liability proceeding differs from the ordinary admiralty suit, in that, by reason of the statute and rules, the court of admiralty has power (*Providence Steamship Co.* v. *Hill Manufacturing Co.,* 109 U. S. 578) to do what is exceptional in a court of admiralty—to grant an injunction, and by such injunction bring litigants, who do not have claims which are strictly admiralty claims, into the admiralty court.  Benedict on Admiralty, 5th ed., § 70, note 97.  There necessarily inheres, therefore, in the character of the limitation of liability proceeding, in reference to such non-admiralty claims, the jurisdiction to fulfil the obligation to do equitable justice to such claimants by furnishing them a complete remedy.

The indemnity company seeks in this review to avoid its liability under an *ad interim* stipulation having a provision that such stipulation, if not changed to a formal stipulation, shall stand as security for all claims in the limitation proceeding.  The stipulation is a substitute for the vessel itself and the freight which was released by reason thereof.  The effect of such a stipulation in admiralty is set forth by Mr. Justice Story in *The Palmyra,* 12 Wheat. 1, where he says:

"Whenever a stipulation is taken in an admiralty suit, for the property subjected to legal process and condemnation, the stipulation is deemed a mere substitute for the thing itself, and the stipulators liable to the exercise of

all those authorities on the part of the court, which it could properly exercise if the thing itself were still in its custody. This is the known course in admiralty. It is quite a different question whether the court will, in particular cases, exercise its authority where sureties on the stipulation may be affected injuriously; that is a question addressed to its sound discretion."

In *The Oregon*, 158 U. S. 186, 210, after reference to *The Palmyra* and an examination of the English authorities, it was held that the use of bail as a substitute for the property itself is confined to " all points fairly in adjudication before the Court." In that case a stipulator for the release of a vessel libeled for a collision was held not to be responsible to interveners in the suit, intervening after the release of the vessel, in the absence of express agreement to that effect. In reversing the court below, this Court said, through Mr. Justice Brown:

" We think the court must have confounded a stipulation given to answer a particular libel with a stipulation for the appraised value of the vessel, under the limited liability act, which by general admiralty rule 54, is given for payment of such value into court whenever the same shall be ordered, and in such case the court issues a monition against all persons claiming damages against the vessel, to appear and make due proof of their respective claims. And by rule 55, after such claims are proven and reported, ' the moneys paid, or secured to be paid into court as aforesaid, or the proceeds of said ship or vessel and freight shall be divided pro rata amongst the several claimants, in proportion to the amount of their respective claims.' By rule 57, if the ship has been already libelled and sold, the proceeds shall represent the same for the purpose of these rules. In all cases cited, in which it has been said that the stipulation is a substitute for the thing itself, the remark has been made either with reference to the particular suit in which the stipulation is given, or with reference to a stipulation for the appraised value of the ves-

sel, where the stipulation stands as security for any claim which may be filed against her up to the amount of the stipulation."

It is quite evident from this that the stipulation under Rule 51 (formerly 54), *et seq.*, is to be treated as a substitute for the vessel itself for all claims that may normally arise out of the character of litigation carried on under such rules. That litigation, as we have seen, may properly be carried to a complete settlement of all claims, without regard to whether the prayer for limitation of liability is denied or not. The stipulator must, therefore, pay in full on his undertaking to enable the court to pay the costs and make the pro rata distribution.

*Judgment affirmed.*