## THE MIAMI.
## In re CLYDE LIGHTERAGE CO., Inc.

District Court, E. D. New York.
July 24, 1930.

Single & Single, of New York City (William J. Mahar, of New York City, of counsel), for the Miami.

Neil P. Cullom, of New York City (James E. Freehill, of New York City, of counsel), for respondent.

Hatch & Wolfe, of New York City (J. Newton Nash, of New York City, of counsel), for the intervener.

INCH, District Judge.

This is a suit by the Clyde Lighterage Company, Inc., as owner of the steam lighter Miami, to limit its liability.

The petition was filed August 29, 1925. An answer to the libel and petition was duly filed on October 5, 1925, by the copartnership, Francis O. de Luce & Co., claimant of a cargo of soap, which it is alleged was damaged while on board the lighter at the time in question.

The issues duly came on for trial, and at the trial another creditor, the Fabre Line, was allowed to intervene, but without costs.

In substance it appears that on the 10th day of April, 1925, the steam lighter Miami, which had been loaded at Staten Island with about 45 tons of soap, valued at approximately $50,000, arrived at Pier 4, Bush Dock, Brooklyn, and made fast to the side of the pier.

She had a master on board named Balken. She also had a fireman named Johnson, both of whom were called by petitioner as witnesses.

During the early morning of the following day, April 11, she sank at said pier. There were no unusual weather conditions nor proof of any collision. As libelant alleges, she sank "from some cause unknown." In other words, this vessel apparently gradually took in water and quietly went down.

This submersion caused some damage both to the lighter and her cargo of soap.

Thereupon, on or about July 30, 1925, the owners of this cargo of soap brought suit in the state court against the petitioner and others to recover the damages to the soap in the sum of $2,711.37.

The owners of the lighter filed its libel and the petition to limit its liability to the value of the lighter, which it alleged "did not exceed the sum of $285."

There is some proof by the witness Kenny that after the lighter was raised he bought her for $250; the witness stating, "The boiler is worth that."

On the trial there was no real effort made by petitioner to dispute its liability as bailee of this cargo, and in the brief for petitioner it is stated: "The petitioner, as bailee of the damaged claimant cargo, admittedly has not met the burden of explanation imposed upon it. As was apparent at the trial the main issue involved is the right of the petitioner to limitation of its liability. This question of course depends on whether or not the sinking was due to the unseaworthiness of the Miami within the privity or knowledge of the petitioner."

The only matter to be decided, as I find liability exists for the damage sustained by the soap, is this right to limit.

■ The questions, therefore, are, Was the Miami unseaworthy at the time it loaded on board the soap, and, if so, was this within the privity and knowledge of the petitioner?

In my opinion both questions must be answered in the affirmative.

In the first place, the lighter sank at her berth with no explanation of the cause of the sinking except that she apparently could not stay afloat. Witnesses for petitioner claim she did not have as large a load as she could carry. The Jungshoved (C. C. A.) 290 F. 733. Also a seaworthy boat must at least stay afloat, and this one could not.

In addition, two years before she had done the same thing, and her owner, the same petitioner as here, had attempted then to limit its liability, but without success. That suit came before this court, and Judge Moscowitz held, in an opinion, that she was unseaworthy with the knowledge and privity of her owner. This decree was appealed and affirmed by the Circuit Court of Appeals. Richmond-New York S. S. Co. v. Clyde Lighterage Co., 36 F.(2d) 1021.

Apparently the lighter was then overhauled, but such repairs as were made were insufficient to sustain the old boat which had outlived her usefulness. Her planks had become soft, and her career was nearly at an end. Nevertheless, she did manage to struggle along until April, 1925.

The claimant produced a competent expert witness, Frank E. Bagger, who had gone all over her after she had sunk in 1923 and had found her unseaworthy then. A conclusion likewise found by the court.

This witness gave testimony of what he personally observed when he examined her shortly after this second sinking in 1925, while she was lying at the Jersey City dry dock, Jersey City, N. J.

It is unnecessary to go into the details of this condition of the lighter. Suffice it to say that Bagger "found practically the same condition existed. There had been some minor repairs made," for example, "the guards had been repaired and guard irons, but inside the hull I found that the dock beams and upper ends of the frames and the knees etc., had, if anything, gotten worse."

To be sure the petitioner produced expert witnesses in an attempt to contradict the condition found by Bagger. But the circumstances surrounding the sinking, her old age, and very evident depreciation, all tend to support the correctness of Mr. Bagger's testimony.

I find, therefore, that the lighter was unseaworthy at the time she took on the load of soap.

■ The remaining question is whether this condition existed with the privity and knowledge of petitioner.

It is a corporation, and its president was a witness. He naturally depended a great deal on papers and documents which, because of a removal of the office of the corporation in April, 1927, were thereafter not available. "There was a great mass of accumulated stuff that was immaterial and instead of taking it to my home, we destroyed much of it."

Without these papers, and five years having passed since the accident, the substance of his testimony really is of little value.

He remembers that they obtained a license after the sinking in 1923 and that certain repair work was done. He also stated that he had not seen any reports from her captain regarding the condition of the lighter, and that "we depend upon the captain to report those things," etc.

On the question of privity and knowledge, his testimony may be summed up in the state-

ment that he possibly had no reason to think she was not able to do and perform the service. This was held insufficient under circumstances somewhat similar in The Loyal (C. C. A. 2) 204 F. 930, see concurring opinion, Judge Ward, page 933.

To be sure, the settled rule is that knowledge or privity to defeat the right to limit must be shown to be not merely constructive but in a measure actual. "It must be actual, in the sense of knowledge or authorization, or immediate control of the wrongful acts or conditions, or through some kind of personal participation in them." The Oneida, 282 F. 238, 241 (C. C. A. 2).

The burden of proving that it had no such knowledge or privity is on the petitioner. Reichert Towing Line, 251 F. 214 (C. C. A. 2).

These defects, of a most serious nature, had existed for a long time, and were structural. In re P. Sanford Ross, Inc. (C. C. A.) 204 F. 248–252. The company should have informed itself of this very apparent condition. The Republic (C. C. A.) 61 F. 109–113.

There is no proof that there was any serious system of inspection or reliance upon any really competent person for that purpose.

Under such circumstances not only has there been a failure of proof on the part of the petitioner, but the facts all indicate a situation that may well raise a presumption that the corporation must be presumed to have had knowledge of her condition. See In re P. Sanford Ross Inc., 204 F. 248 (C. C. A. 2).

There are many other cases cited by counsel in their excellent briefs, but I am satisfied that the facts do not justify a limitation of liability in this case.

Accordingly, the petition must be denied, and, as this court has jurisdiction in view of the answers and trial (Hartford Accident v. Southern Pacific, 273 U. S. 207, 47 S. Ct. 357, 71 L. Ed. 612), the question of damage is referred to a commissioner.