Petition of **TRINIDAD CORPORATION** as Owner of the S/S **SAN JACINTO** for exoneration from or limitation of liability in a cause of limitation of liability, civil and maritime.

No. 770.

United States District Court
E. D. Virginia,
Newport News Division.

March 8, 1965.

C. Arthur Rutter, Jr., Norfolk, Va., Abraham E. Freedman, Philadelphia, Pa., for claimants.

Seawell, McCoy, Winston & Dalton, Robert M. Hughes, III, Norfolk, Va., for petitioner.

WALTER E. HOFFMAN, Chief Judge.

Certain preliminary matters having arisen in the above proceeding which require the attention of the Court, the comments hereinafter made will cover these issues.

On April 6, 1964, Trinidad Corporation, the owner of the tank vessel SAN JACINTO, filed its petition for exoneration from or limitation of liability. On March 25, 1964, while the vessel was proceeding in ballast from Maine to Florida, the tanker exploded when approximately 50 miles off the coast of Virginia. Several hours thereafter the ship broke into two parts. Certain of the officers and crew members were on the forward part, while the remaining crew members were in the stern section. The chief steward allegedly died of a heart attack. The other crew members claim injuries as a result of this harrowing experience.

An injunctive order was entered on April 6, 1964, and an *ad interim* stipulation was directed to be filed by the petitioner in the amount of $900,000.00 for the value of the vessel, pending freight and demurrage. A monition was issued directing the filing of claims on or before July 6, 1964.

Twenty-five crew members seasonably filed identical claims in this proceeding, each seeking compensatory damages in the sum of $200,000.00 and punitive damages in a like amount. Each claim alleged that the crew member had required medicines, medical care and attention. Each alleged permanent injuries and permanent disability. Each claimed maintenance, cure and wages for the period of disability in such amount as the Court deemed appropriate. Each made claim for the value of gear, clothing, money and other personal possessions. The 25 claimants likewise answered the petition for limitation of or exoneration from liability. The total claims aggregate $10,000,000.00, exclusive of maintenance, cure and wages.

On April 10, 1964, prior to the receipt or knowledge of this Court's order of April 6, the 25 crew members filed civil actions for damages in the United States District Court for the Eastern District of Pennsylvania. Service was effected on April 15–16 upon the Texas Company as the alleged agent for the petitioner. Claimants now indicate that petitioner's agent was Texas Transport and Terminal Company, rather than the Texas Company. Before the alleged proper service could be effected claimants or their proctors received knowledge of the monition

issued by this Court. Claimants then filed their claims as noted above in this Court.

On September 29, 1964, an initial pre-trial conference was conducted, at which time dates were fixed for the processes of discovery, with the petitioner and claimants being required to *complete* all processes of discovery on or before July 1, 1965. The parties were granted until November 1, 1965, within which to conclude the taking of all *de bene esse* depositions. A final pretrial conference was scheduled for December 1, 1965, and the trial date was set for December 13, 1965. A further pretrial conference and hearing on motions was scheduled for October 9, 1964.

On September 29, 1964, petitioner caused a notice to take depositions of the 25 claimants to be served upon claimants' proctors. Petitioner likewise filed a motion for the production of documents, seeking, as to each claimant, (1) federal and state income tax returns for 1959–1964, inclusive, (2) all medical reports of any doctors, physicians or psychiatrists examining or treating conditions alleged to have occurred as a result of the disaster of March 25, 1964, and (3) complete records of any and all hospitals at which each claimant received in-patient or out-patient treatment during his lifetime.

The claimants, by their proctors, filed exceptions and a motion to quash the petitioner's motion for production of documents alleging that (1) complaints have been filed in another district with a demand for trial by jury and claimants wish to have their damages determined by a jury, (2) the documents requested are premature, irrelevant and immaterial to the petition for limitation, and (3) the documents requested are unduly burdensome.

Exceptions and a motion to quash the notice to take depositions were likewise filed by proctors for the claimants contending that (1) the number, dates and times of the depositions requested were burdensome and unnecessary, (2) the information was already available in the sworn testimony of claimants before the Coast Guard, (3) medical testimony is not an issue in the limitation proceeding, (4) information not already possessed by petitioner can readily be obtained by posing interrogatories, (5) the claimants live away from the jurisdiction and many are on merchant ships on the high seas.

Following the argument of proctors on October 9, 1964, briefs were submitted. A formal motion was filed by the claimants requesting that the monition be opened to permit proper service to be made in the pending civil actions in the Eastern District of Pennsylvania. Under the Jones Act, their right to *commence* any action is limited to three years from March 25, 1964. While it may be debatable as to whether the actions filed in the Eastern District of Pennsylvania were a nullity in view of the prior restraining order, it is manifest that the claimants will have ample time to proceed in another district if limitation of liability is denied, and if the Court then determines that the civil actions should be commenced or otherwise proceed.

From the foregoing it is apparent that this is a multiple claim-inadequate fund case, well in excess of the limitation fund of $900,000.00. At least this is true from the face of the pleadings. For the purpose of this proceeding at this moment, it must be assumed that the petition for limitation of liability is meritorious. We cannot assume that the petition will be denied. The Eastern District of Virginia is a proper place for the venue of the limitation proceeding as the stern section of the vessel was towed to Newport News on March 28, 1964.

Claimants rely upon the leading case of Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 50, as authority for opening the monition to permit further proceedings in the civil actions. The distinguishing feature in Langnes is that a single claim was there involved and the Supreme Court expressed "doubt upon the good faith of * * * petitioner" in alleging fear that other claims might

be filed. Moreover, and of even greater importance, is the fact that the civil action was filed in the state court prior to the filing of the petition for limitation of liability—in fact, the petition was filed only two days prior to the scheduled state court trial of the civil action. Jurisdiction of the state court had already attached in Langnes, and the advantage of the limitation proceeding could have been obtained by a proper pleading in the state court as there was only one possible claimant and one owner. It was for these reasons alone that the Supreme Court ruled that the injunction against the state action should be dissolved, with a retention of jurisdiction as to the petition for limitation of liability in the event the state court should elect not to consider the limitation aspect of the case.

The foregoing is in sharp contrast to the multiple claim-inadequate fund situation which is herein presented. Prior to Langnes v. Green, supra, the Supreme Court decided the case of Hartford Accident & Indemnity Co. v. Southern Pacific Co., 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612. There the petitioner, National Oil Transport Company as principal, and Hartford as surety, executed an *ad interim* stipulation covering the value of the barge and her pending freight, same being in the aggregate sum of $11,326.85 plus interest. Claims by the owners of the other vessel were in excess of $484,-000.00. Claims for death or injuries of those aboard petitioner's barge were in the total sum of $65,000.00. Limitation of liability was denied, whereupon Hartford contended that the stipulation executed by it ceased to be effective, that the proceeding was no longer one *in rem,* and that actions against National Oil Transport Company must be conducted in a court having jurisdiction on other grounds. In disposing of Hartford's argument, Chief Justice Taft said:

"It is quite evident from these cases that this Court has by its rules and decisions given the statute a very broad and equitable construction for the purpose of carrying out its purpose and for facilitating a settlement of the whole controversy over such losses as are comprehended within it, and that all the ease with which rights can be adjusted in equity is intended to be given to the proceeding. It is the administration of equity in an admiralty court. Dowdell v. United States District Court [9 Cir.] 139 Fed. 444, 445. The proceeding partakes in a way of the features of a bill to enjoin a multiplicity of suits, a bill in the nature of an interpleader, and a creditor's bill. It looks to a complete and just disposition of a many-cornered controversy, and is applicable to proceedings *in rem* against the ship as well as to proceedings *in personam* against the owner; the limitation extending to the owner's property as well as to his person. The City of Norwich, 118 U.S. 468, 503 [6 S. Ct. 1150, 30 L.Ed. 134].

\* \* \* \* \* \*

"The jurisdiction of the admiralty court attaches *in rem* and *in personam* by reason of the custody of the *res* put by the petitioner into its hands. The court of admiralty, in working out its jurisdiction, acquires the right to marshal all claims, whether of strictly admiralty origin or not, and to give effect to them by the apportionment of the *res* and by judgment *in personam* against the owners, so far as the court may decree. It would be most inequitable if parties and claimants, brought in against their will and prevented from establishing their claims in other courts, should be unable to perfect a remedy in this proceeding promptly, and should be delayed, until after the possible insolvency of the petitioner, to seek a complete remedy in another court, solely because the owner can not make his case of personal immunity. 1 Benedict's Admiralty, 5th ed., 488. If Congress has constitutional power to gather into the admiralty court all claimants against the vessel and its owner, whether their claims are

strictly in admiralty or not, as this court has clearly held, it necessarily follows as incidental to that power that it may furnish a complete remedy for the satisfaction of those claims by distribution of the *res* and by judgments *in personam* for deficiencies against the owner, if not released by virtue of the statute."

In justification of the foregoing, Chief Justice Taft then points out that where a court of equity has obtained jurisdiction over some portion of a controversy, it may and will in general proceed to decide all the issues and award complete relief, even where the rights of the parties are strictly legal and the final remedy granted is of the kind which might be conferred by a court of law.

The vitality of Hartford Accident & Indemnity Co. v. Southern Pacific Co., supra, remains in effect today. As late as 1957 the Supreme Court placed its stamp of approval on this earlier decision in British Transport Commission v. United States, 354 U.S. 129, 137, 77 S. Ct. 1103, 1 L.Ed.2d 1234.

The sole distinction between Hartford and the present case is that, in Hartford, the claimants apparently expressed the desire for the court of admiralty to proceed to a final determination of all matters, including damages and an *in personam* judgment, whereas the 25 claimants involved in the present proceeding are anxious to pursue their remedies under the Jones Act.

■ This Court acknowledges that a petitioner in a limitation proceeding cannot invoke the jurisdiction 'of the court having jurisdiction over the proceeding for the sole purpose of taking the case away from the common-law jurisdiction, as was the situation in Langnes v. Green, supra, and The Lotta, 4 Cir., 150 F. 219. But at this stage of the proceeding we cannot assume that such was the petitioner's sole purpose, especially where there are 25 claimants and an obvious multiplicity of possible actions.

Various authorities have interpreted the aforesaid two leading cases from the Supreme Court as affording an election to the claimants, if exoneration and limitation are denied, to pursue their claims to judgment in the admiralty court or pursue their rights under the Jones Act. In re Wood's Petition, 2 Cir., 230 F.2d 197; Moore-McCormack Lines, Inc. v. Richardson, 2 Cir., 295 F.2d 583; Pershing Auto Rentals, Inc. v. Gaffney, 5 Cir., 279 F.2d 546.[1]

We need not at this time determine whether the injunctive order should be modified at a later date. Claimants' only contention of possible prejudice is that, at some later date, Texas Transport and Terminal Company, the alleged agent for petitioner, may no longer be doing business in Pennsylvania. While petitioner denies the existence of any such agency, and further denies that petitioner is "doing business" with sufficient regularity in Pennsylvania to justify service of process, it is admitted that petitioner (Trinidad Corporation) has its principal place of business in New York. The claimants apparently do not live in Pennsylvania. If exoneration and limitation be denied, the claimants can, subject to the further ruling of this Court, pursue their common-law remedy under the Jones Act in New York or possibly Virginia. At best the venue in Pennsylvania is extremely doubtful in light of the Third Circuit's decision in Leith v. Oil Transport Company, 321 F.2d 591. Unless the Third Circuit reverses its position or the claimants can establish that petitioner resides or has its principal office within the Eastern District of Pennsylvania, the venue would not be properly laid and the 25 common-law actions under the Jones Act would have to be transferred to another district.

1. The judge of this Court has had occasion to reopen a monition to permit the filing of a Jones Act suit, subject to certain conditions, in the Petition of United States of America, etc., as owners of the USNS POTOMAC, EDNC, 237 F. Supp. 434, decided April 8, 1964, and now on appeal from an interlocutory order.

■ We think that in the orderly administration of the limitation proceeding the motion filed by the claimants to open the monition should be denied, without prejudice to the rights of the claimants, or any of them, to renew such motion in the event the exoneration and limitation proceedings have not been fully determined by final orders at least six months prior to the expiration of the statute of limitations as prescribed by the Jones Act. Such a provision will fully protect the claimants as to such rights, if any they have, to proceed at law.

■ Turning to the motion for production of documents and claimants' contention that any discovery should be limited to facts concerning liability, we cannot agree that the discovery should be so restricted. It does appear that the orderly procedure in such instance is to initially determine the issue of fault and limitation, and thereafter consider the claims in the event liability is ascertained. To this extent our procedure differs generally from that existing in foreign jurisdictions. British Transport Commission v. United States, 354 U.S. 129, 143, 77 S.Ct. 1103, 1 L.Ed.2d 1234. At the same time the Court must consider the "economy of trial litigation" so much desired in judicial administration. To limit discovery at this stage to matters of liability would, in effect, prolong the litigation and require the filing or continuation of a secondary action in another court. And while the claimants now insist upon their right to trial by jury, the minds of one or more may change in the interim period. To foreclose discovery as to damages would, of necessity, preclude any discussion of settlement—a matter not to be lightly considered by parties.

■ The claimants cannot be prejudiced through the medium of discovery as to damages. If they have sustained serious and permanent injuries, the early disposition of their cases should be encouraged, not impeded. Assuming arguendo that exoneration and limitation will be denied, the information furnished in discovery will hasten the earlier disposition of the claims for damages, whether in this or some other court. As a condition to granting discovery on damages at this time, the court will consider the entry of an order that such discovery will not be repeated at a later date in this or any other court, with the further understanding that information obtained on discovery may be used by the now petitioner at any trial on damages if the information is deemed relevant by the trial court.

Reliance upon Sinclair Refining Co. v. Jenkins Co., 289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449, 88 A.L.R. 496, is urged by claimants. Decided prior to the adoption of the General Admiralty Rules or Federal Rules of Civil Procedure, it involved the use of a bill of discovery in aid of an action at law arising out of a dispute relating to a claim to a patent. Admittedly there is language in the opinion indicating that actions triable in separate parts, one affecting the right or liability and the other affecting the measure of recovery, will commonly result in a postponement of the damages until the right or liability has been established. But the Court goes further by stating that it "is all a matter of discretion." We must remember that in the present case the 25 claimants are seeking, in addition to compensatory and punitive damages, damages for maintenance and cure. While the claims do not specifically request damages by way of attorney's fees for failure to pay maintenance or provide cure, it is a relatively simple matter to seek an amendment of the claims to accomplish this purpose. And it follows that if, in fact, petitioner has failed to pay maintenance or provide cure, the petitioner is subjected to possible damages by way of attorney's fees. Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88. What the petitioner desires to ascertain is the extent of its exposure in this multiple claim-inadequate fund case, whether limitation is granted or not. Furthermore, if these claimants had proceeded to trial in the Eastern District of Pennsylvania, they would have subjected themselves to discovery on the issue of dam-

ages long prior to this date. In the exercise of discretion and in anticipation that early discovery will advance the cause of justice and the earlier trial of these claims, we hold that discovery on damages should not be restricted until after liability is determined. Certainly if limitation is granted, it is to the advantage of all claimants that discovery on damages be concluded, thereby permitting immediate consideration of the damage claims.

■ Claimants further contend that copies of medical and hospital reports for treatment and service rendered to claimants cannot be demanded unless the claimants first request an exchange of such reports. Claimants direct attention to Admiralty Rule 32A(b) (1). Manifestly claimants have misconstrued the purpose of Admiralty Rule 32A. This entire Rule is devoted to the situation in which the Court has ordered the injured party to submit to a physical or mental examination. While the Court agrees with petitioner that no portion of Rule 32A forecloses the right of petitioner to inspect and copy medical reports involving these claimants, the petitioner is forewarned that the inspection and copying of such records at this or any later date *may* deprive petitioner of the right to thereafter seek an independent mental or physical examination of the particular claimant. The independent mental or physical examination can only be ordered "for good cause shown" and the prior disclosure of such a report *may* destroy the orderly application of Rule 32A(b) (1).

■ Claimants argue that any report previously submitted by a physician selected by a claimant is privileged. With the petitioner the Court is of the opinion that the disclosure of such report under a motion filed pursuant to Admiralty Rule 32 is not privileged but that the motion may be granted in the discretion of the Court upon a showing of "good cause." Claimants place great stress upon Sher v. DeHaven, 91 U.S.App.D.C. 257, 199 F.2d 777, 36 A.L.R.2d 937. It should be noted that the decision is grounded upon a statute, § 14–308, D.C.

Code 1940, which grants a statutory privilege to information obtained by the physician in his professional capacity. Aside from the question of statutory privilege, the Court noted that under Rule 34, Federal Rules of Civil Procedure, the matter was largely discretionary and, under the circumstances of that case, the trial court did not abuse its discretion in denying the motion where plaintiff had voluntarily submitted to an examination by physicians of defendant's choice on three occasions well in advance of trial—one such examination being prior to the filing of the motion for production. There is no room for disagreement with the decision in Sher, but it does not follow that all physician's reports are privileged and not subject to production on an appropriate motion.

In Benning v. Phelps, 2 Cir., 249 F.2d 47, also relied upon by claimants, there was no discussion of privilege and again the Court noted that the granting or denial of the motion was within the discretion of the trial court. Prior to the commencement of any action, plaintiff had, at defendant's request, voluntarily submitted to a physical examination by a physician of defendant's choice. After the suit was brought, plaintiff refused to submit to another examination and defendant filed a motion for same under Rule 35, Federal Rules of Civil Procedure. The motion was granted and, *by the terms of the order*, defendant was directed to provide plaintiff with a copy of the report relating to the second examination. Defendant complied and then moved under Rules 34 and 35(b) (1) to require production of the reports of plaintiff's doctors. This motion under Rule 34 was denied and affirmed on appeal as there was no showing of "good cause." As to the denial under Rule 35, the court noted that plaintiff had not "requested" a copy of the report of the second examination by a physician of defendant's choice but that the copy was furnished under the court's direction as a condition of granting the second examination. We find no fault with this ruling.

**936**

■ While expressing doubt that any statute in Virginia should even be considered in a case involving a disaster occurring 50 miles off the coast of Virginia on the high seas, we note in passing that the physician-patient privilege accorded by § 8–289.1 of the Code of Virginia is not applicable "when the physical or mental condition of the patient is at issue in such action, suit or proceeding or when a judge of a court of record, in the exercise of sound discretion, deems such disclosure necessary to the proper administration of justice." The Virginia statute, while apparently directed to a physician *testifying,* specifically provides that under the language quoted above, the information obtained by the practitioner shall not be privileged and "disclosure" may be required. As stated in Portsmouth v. Cilumbrello, 204 Va. 11, 129 S.E.2d 31, the contents of a medical report, though arising out of the physician-patient relationship, are not privileged if the physical condition of the plaintiff is at issue in a legal proceeding. Cf. DeFoe v. Duhl, 4 Cir., 286 F. 2d 205.

■ The free exchange of medical reports promotes a prompt disposition of litigation. In the vast majority of cases, attorneys exchange such reports without the necessity of a court order. We realize, however, that the wording of Rule 32A(b) (1), which is identical to Rule 35(b) (1), of the Federal Rules of Civil Procedure, is not without some purpose. We construe the words, "After such request and delivery the party causing the examination to be made shall be entitled upon request to receive from the party examined a like report of any examination, previously or thereafter made, of the same mental or physical condition," to mean that, if an independent examination is ordered by the court, the reports of prior examinations shall not be revealed in advance of the independent examination but shall be produced after the report of the independent examination has been requested and delivered to the party examined or his attorney. Benning v. Phelps, 2 Cir., 249 F.2d 47. How-

ever, if the party desires to risk foregoing any rights to an independent examination, a copy of the report is within the proper scope of discovery and, perhaps in "exceptional" cases, "good cause" may still be established to justify an independent examination.

■ We agree that Admiralty Rule 32A is subject to the same interpretation as Rule 35 of the Federal Rules of Civil Procedure. Since this matter was argued and briefed the Supreme Court has handed down its opinion in Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 1, decided November 23, 1964. It is plain that the requirement of "good cause" under Rules 34 and 35 is not to be treated lightly. Mr. Justice Goldberg quotes with approval the language of former Chief Judge Soboloff in Guilford National Bank v. Southern R. Co., 4th Cir., 297 F.2d 921, 924. Obviously the claimants herein have placed their mental and physical condition clearly in controversy and, at an appropriate time, petitioner would undoubtedly be entitled to an independent examination *if petitioner has not already examined the reports from claimants' physicians.* But petitioner "cannot have its cake and eat it, too." Only if the report of a claimant's physician indicates the need for an expression of opinion in a specialized field of medical expertise, or there is vagueness or uncertainty in the physician's findings, can this Court generally conclude that an independent examination is necessary, or possibly when claimant's physician is not thoroughly qualified in such specialized field. Rule 32A (Admiralty) and Rule 35 (Civil Procedure) apparently were designed to restrict independent examinations ordered by the court after the party seeking the examination has resorted to the discovery of reports and has successfully obtained same. The reason is plain—it would be unfair to supply an independent examining physician with copies of reports of other physicians relating to examinations made prior thereto where such prior reports were obtained under an order requiring the production of same.

We cannot say at this time that petitioner has established "good cause" for the production of such reports of physicians and hospitals. The more orderly procedure would be for petitioner to propound interrogatories to claimants relating to all phases of their injuries, treatment, etc., under Admiralty Rule 31. Moreover, subject to such proper orders as may be entered affording protection under Admiralty Rule 30E(b), the claimants may be interrogated by deposition as to the claimed injuries, treatment, names of physicians, hospitals, etc. If claimants have not been examined or treated, petitioner may elect to seek an independent mental and physical examination under Admiralty Rule 32A. If claimants have been examined or treated, petitioner may be faced with an election to seek discovery under Admiralty Rule 32 or, in the alternative, request an independent examination under Admiralty Rule 32A. Only in the event of a "special circumstance" will petitioner be entitled to relief under both Admiralty Rules 32 and 32A.

Nothing is said in the briefs with respect to the motion for production of federal and state income tax returns for the years 1959 through 1964, as filed by the claimants. There is a general objection to the effect that the documents requested are premature, irrelevant and immaterial to the petition for limitation. Disagreeing with this contention the Court, nevertheless, feels that "good cause" has not been shown at this time. Matters involving wages and other income are properly the subject of interrogatories and depositions. If a claimant contends that he has lost what may appear to be an exaggerated amount of wages and other income, it is not unlikely that "good cause" may then be established for the production of the tax returns.

Not argued, but appearing in the file, are exceptions and motions to quash notices to take depositions. "Good cause" is not required to take depositions. Questions pertaining to the physical or mental condition of a claimant are clearly proper. Merchant seamen on duty on vessels throughout the world are not immune from discovery depositions. Of course, it is impossible to take all of these depositions at one time or place, but proctors may make arrangements for the claimants to be deposed at various times and places. Claimants may seek protection of the court under Admiralty Rule 30E(b) but such request must be seasonably made.

Present order in accordance with the aforesaid rulings.