UNITED STATES of America,
Plaintiff-Appellee,

v.

PACIFIC FAR EAST LINES,
INC., Defendant,

and

Pacific Far East and Maritime
Employees Association,
Claimant-Appellant.

No. 85–2750.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 12, 1986.

Decided Feb. 12, 1987.

Philip A. Berns, San Francisco, Cal., for plaintiff-appellee.

Richard Harrington, San Francisco, Cal., for claimant-appellant.

Before KENNEDY, TANG and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The United States filed a complaint in the district court against the M/V Atlantic Bear, in rem, and against Pacific Far East Lines, Inc. ("PFEL"), in personam, to foreclose a preferred ship's mortgage and to recover any resulting deficiency judgment. Pacific Far East and Maritime Employees Association ("the Association") intervened seeking loss of pay and employment benefits for its members who were "shoreside" employees of PFEL. The Association contended the claims of its members should have priority over the United States' preferred ship's mortgage because of the nature of the claims and the conduct of the government. The district court granted the government's motion for summary judgment and dismissed the Association's claims. We affirm.

The district court, the Hon. Charles A. Legge presiding, in its Opinion and Order for Summary Judgment filed September 30, 1985, accurately summarized the facts, analyzed the contentions of the parties, and applied the law in this case. The opinion is well reasoned, and we adopt the following portions of it as the opinion of this court:

## FACTS

"The United States Maritime Administration ('MARAD') is an agency of the United States of America charged with fostering the development and growth of the American merchant marine. Pursuant to the Merchant Marine Act of 1936, 46 U.S.C. § 1101, et seq., MARAD is authorized to enter into Operating Differential Subsidy ('ODS') contracts with shipping companies operating in foreign trade.

"Pacific Far East Lines, Inc. ('PFEL') is a Delaware corporation. During the period preceding this case, PFEL conducted shipping operations in foreign trade under the authority of ODS contracts with MARAD.

"The Pacific Far East & Maritime Employees Association ('Association') represents for purposes of this case certain former employees of PFEL. The Association's members were shoreside workers in PFEL's offices, and were not seamen, crew members, longshoremen or repairmen of vessels.

"In 1976 PFEL purchased the SS Atlantic Bear for $47,750,000. In connection with that purchase, PFEL executed and delivered a promissory note to MARAD for the benefit of the United States. That note was secured by a preferred ship mortgage on the Atlantic Bear. The mortgage was recorded in November 1976 and endorsed by the Atlantic Bear's documents in February 1977. In connection with the purchase of the Atlantic Bear, PFEL also issued bonds that were guaranteed by the United States pursuant to Title XI of the Merchant Marine Act, 46 U.S.C. § 1271. Union Bank was designated as the trustee for the holders of those bonds.

"There was a series of major business and financial transactions by PFEL in 1976 and 1977, of which MARAD was aware. And the operations and finances of PFEL were deteriorating. Due to its financial difficulties, PFEL decided to sell one of its vessels in 1977. PFEL entered into a sale and leaseback of SS Pacific Bear to Continental Illinois Leasing Corporation. Under the ODS contract between PFEL and MARAD, PFEL was required to obtain MARAD's consent to the sale and leaseback. MARAD consented to the transaction after MARAD and PFEL reached an agreement on the specific manner in which the proceeds of the sale would be spent.

"In November 1977, PFEL was still in financial trouble and was unable to make a $1,000,000 principal payment to Union Bank as trustee of the bonds issued for the purchase of the Atlantic Bear. In Decem-

ber 1977, MARAD advanced that principal payment to Union Bank on behalf of PFEL.

"PFEL's financial difficulties continued, and in January 1978 PFEL voluntarily commenced a Chapter 11 bankruptcy proceeding. The note and ship mortgage went into default in May and June 1978. In July 1978, the reorganization proceeding was changed to a liquidation bankruptcy and a trustee was appointed.

"The United States then filed this suit to foreclose the preferred ship mortgage on the Atlantic Bear, and to collect the sums due on the promissory note secured by the mortgage. The defendants were PFEL, in personam, and the Atlantic Bear, in rem. Pursuant to a joint order of the district court and the bankruptcy court, any person claiming a maritime lien against the Atlantic Bear was permitted to file a claim and intervene. The Association filed a claim and intervened on behalf of its members, seeking back pay, severance benefits, vacation pay, and certain retirement benefits."

## CONTENTIONS OF THE PARTIES

"As stated, this action is to foreclose plaintiff's preferred ship mortgage and to collect the note. PFEL and the Association do not dispute the original validity of the note or the mortgage. Rather, the Association contends that the mortgage should be subordinated to its members' claims. The grounds alleged for the subordination are based upon (1) the above actions of MARAD in 1977, and (2) MARAD's alleged operation and control of PFEL when it was insolvent. The Association charges that those actions were to protect MARAD and the United States, and were in derogation of the rights of the Association's members.

"[The United States] asserts two defenses to the claims of the Association; this court believes that both are dispositive and compel summary judgment for [the government]. One is that the claims of the Association are not maritime liens which can cause the subordination of a preferred ship mortgage. The second is that the Association's allegations are not really a challenge to the mortgage; rather, they are an at-

tempt to subordinate the United States' position because of alleged torts by its agency MARAD, which torts are barred by the Federal Tort Claims Act, 28 U.S.C. § 1346, et seq."

## DISCUSSION

"The joint order allowing claimants to intervene pertained only to maritime liens. And 46 U.S.C. § 953 provides that only preferred maritime liens take priority over a preferred ship mortgage.

"The claims by the Association are for loss of pay and employment benefits by shoreside employees. It is stipulated that those employees were not seamen, crew members, longshoremen, or repairmen. Based upon the stipulations of fact, the nature of the members' employment, and the applicable law, the court concludes that their claims are not maritime claims and do not give rise to maritime liens. *See West Winds, Inc. v. M.V. Resolute,* 720 F.2d 1097 (9th Cir.1983).

"The Association alternatively argues that the claims which could require the subordination of a preferred ship mortgage are not limited to maritime liens. However, this argument is contrary to the language of 46 U.S.C. § 953, and to established maritime law. *See* G. Gilmore and C. Black, *The Law of Admiralty,* 586–817 (2d ed. 1975); Richards, *Maritime Liens in Tort, General Average and Salvage,* 47 Tul.L.Rev. 569–86 (April 1973).

"The Association then argues that because this action was initiated under the admiralty jurisdiction of this court, i.e., to foreclose the ship mortgage, this court has the power to resolve the priority of all liens, whether admiralty liens or not. The Association cites *Hartford Accident & Indemnity Co. v. Southern Pacific Co.,* 273 U.S. 207, 217, 47 S.Ct. 357, 359, 71 L.Ed. 612 (1927). However, that case is not applicable here. In *Hartford,* the Court was concerned with the construction of the Limitation of Liability Act, the legislative objective of which is to marshal both admiralty and non-admiralty claims in order to

serve the legislative purpose of limiting the liability of shipowners. We are here dealing with another statute, 46 U.S.C. § 953, which expressly regulates ship mortgages, their priority, and their relationship to other claims.

"The court concludes that the Association's claims are not maritime in nature and that only maritime liens could result in the subordination of plaintiff's preferred ship mortgage.

"The Association's allegations against the plaintiff here must also be considered as tort claims against the United States. The allegations do not really concern the validity of the ship mortgage itself; rather, they pertain to alleged tortious conduct by MARAD *after* the mortgage was recorded. Torts asserted against the United States must meet the requirements of the Federal Tort Claims Act. 28 U.S.C. § 1346, et seq. Under that Act, the United States has waived its sovereign immunity and has consented to be sued only for certain torts, and only upon certain conditions. It is admitted by the parties that defendants did not comply with the jurisdictional and procedural requirements of that Act. Further, allegations of misrepresentation and deceit—which the Association here alleges against MARAD—are not consented to by the Act and are specifically barred. 28 U.S.C. § 2680(h). The United States has not waived its immunity from such allegations.

"The Association argues that the United States has waived the protection of the Act and has consented to be sued by filing this action. However, this suit is not a waiver and consent to be sued for torts. The United States did not sue the Association; and the Association's claims are not counterclaims or offsets to the complaint of the United States. This suit was an in rem action to foreclose the mortgage against the ship, and an in personam action *against PFEL* to collect the note. The Association's claims arise from different, and later, alleged conduct." [1]

AFFIRMED.

---

1. The Association raised a number of other arguments on appeal which necessitate only brief comment. The contention that equitable principles of unclean hands or estoppel require subordination of MARAD's mortgage is without merit because the question of subordination in this case does not implicate general principles of equity, but rather is controlled by 46 U.S.C. § 953 which specifically regulates the relative priorities of maritime liens and ships mortgages; and the Association's claim is not a maritime claim (cf. *Northwest Marine Works v. United States,* 307 F.2d 537, 541 (9th Cir.1962) [advances under ships mortgage subordinated to maritime liens] ).

The suggestion that section 67(d) of the Bankruptcy Act requires subordination of the MARAD mortgage is without merit because section 67(d) subordination may only be asserted by a trustee in bankruptcy. The Association's argument that MARAD in effect "elected" subordination of the mortgage by continuing to operate PFEL despite its insolvency is unpersuasive since there is no requirement of immediate bankruptcy proceedings upon insolvency. Finally, we see no merit in the Association's unsupported claim that MARAD did not obtain its preferred ship mortgage in good faith.