Barbara STISSI, Individually, and as Personal Representative of the Estate of Ronald Stissi, Deceased, Plaintiff,

v.

INTERSTATE AND OCEAN TRANSPORT CO. OF PHILADELPHIA, Defendant.

In the Matter of the Complaint of INTERSTATE TOWING CO., as Owner of the TUG DELAWARE, Interstate Marine Transport Co., as Owner of the BARGE INTERSTATE 36, and Interstate and Ocean Transport Co., as Bareboat Charterer of the BARGE INTERSTATE 36 and the TUG DELAWARE, Plaintiffs, for Exoneration from or Limitation of Liability.

Judith LAX, as Administratrix of the Estate of Ruth Calabro, Deceased, Plaintiff,

v.

INTERSTATE TOWING CO., as Owner of the TUG DELAWARE, Interstate Marine Transport Co., as Owner of the BARGE INTERSTATE 36, and Sonat Marine Inc., Formerly known as Interstate and Ocean Transport Co., as Bareboat Charterer of the BARGE INTERSTATE 36 and TUG DELAWARE, Defendants.

Thomas J. FUREY, Plaintiff,

v.

INTERSTATE TOWING CO., as Owner of the TUG DELAWARE, Interstate Marine Transport Co., as Owner of the BARGE INTERSTATE 36, and Sonat Marine Inc., Formerly known as Interstate and Ocean Transport Co., as Bareboat Charterer of the BARGE INTERSTATE 36 and TUG DELAWARE, Defendants.

Nos. 80 C 2903, 81 C 825, 82 C 2251 and 83 C 1989.

United States District Court, E.D. New York.

July 31, 1984.

Edward F. Gerace, Tampa, Fla., Alvin L. Stern, New York City, for plaintiff Stissi.

Kramer, Dillof, Tessel, Duffy & Moore, New York City (Charles Kramer, Jesse S. Waldinger, New York City, of counsel), for plaintiff Lax.

James Rowen, New York City, for Furey as plaintiff.

Curtis Hart & Zaklukiewicz, Merrick, N.Y. (Paul S. Devine, Merrick, N.Y., of counsel), for Furey as defendant.

McHugh, Leonard & O'Connor, New York City (James D. Hazen, New York

City, of counsel), for defendant Sonat Marine Inc.

## ORDER

NICKERSON, District Judge.

This case is before the court on motions following a jury trial. The jury returned a special verdict in the form of answers to interrogatories. To the extent that any party is not entitled to a jury trial the court treats the verdict as advisory.

In a memorandum and order dated June 28, 1982, this court denied the petitions of Sonat Marine Inc. (Sonat) and Thomas Furey for exoneration from or limitation of liability, and found Sonat to be 80% at fault and Furey to be 20% at fault for the collision that is the subjection of the action.

The Court of Appeals affirmed that portion of the judgment that denied exoneration from and limitation of liability, but remanded for reconsideration of the apportionment of fault. 717 F.2d 752, 757 (2d Cir.1983). Familiarity with this court's memorandum and order and with the opinion of the Court of Appeals is assumed.

In an order dated December 7, 1983, this court consolidated the four cases for trial, rejecting Sonat's contention that Stissi was not entitled to a jury trial, and ruled that to the extent that any other plaintiff was not entitled to a jury trial, the court would deem the verdict advisory. Sonat's petition to the Court of Appeals for a writ of mandamus overruling that order was denied.

Prior to trial this court ruled that its previous findings that Sonat and Furey were negligent would have *res judicata* effect at the trial and that the extent of the negligence of each party were issues to be tried and decided anew.

The jury returned a verdict finding Sonat 94% at fault, Stissi 3% at fault and Furey 3% at fault and found damages to all of the claimants.

Sonat moves for an order (1) striking damages awarded to decedent Stissi's stepchildren, Mia Terese and Stephanie Depalo; (2) rejecting the advisory verdict and entering findings of fact on the Lax claim, brought by the representative of Ruth Calabro's estate; and (3) reallocating the fault attributed to Sonat, Furey and Stissi. In the alternative, Sonat moves for a new trial on the issues of the Lax claimants' damages and the apportionment of fault.

Lax moves the court to find inadequate that portion of the verdict awarding $30,-000 to the Calabro estate for pain and suffering sustained by the decedent prior to her death and to fix a higher award. Stissi and Lax move for prejudgment interest.

## I

Sonat contends that the children of decedent Stissi's wife are not entitled to damages under general maritime law. Sonat did not request that the court put to the jury the factual issue of whether the Depalo children were dependent on Ronald Stissi. Therefore, pursuant to Federal Rule of Civil Procedure 49(a), the court will make this finding. *Croce v. Kurnit*, 737 F.2d 229 (2d Cir.1984). The children lived in Stissi's household and were supported by him and thus were clearly dependent on him up to the time of his death, whether or not he had a legal obligation to support them.

In *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Supreme Court held that an action lies under general maritime law for wrongful death. Then, in *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 584–85, 94 S.Ct. 806, 814–815, 39 L.Ed.2d 9 (1974), the Supreme Court held that the decedent's "dependents" could obtain damages under that law for loss of society in addition to loss of support and services.

■■ The Supreme Court has not yet decided the issue of which "dependents" may sue under general maritime law but has suggested that courts might look for guidance to the Death on the High Seas Act and perhaps to state wrongful-death acts. *Moragne v. States Marine Lines, Inc., supra*, 397 U.S. at 408, 90 S.Ct. at 1791. Sonat argues that since most state wrong-

ful-death statutes do not allow stepchildren to recover, they should not do so under general maritime law. Stepchildren, however, may sue under the Death on the High Seas Act as "dependent relatives." 46 U.S.C. § 761; *Petition of the United States*, 418 F.2d 264, 270–72 (1st Cir.1969).

■ Several courts have allowed stepchildren to recover their pecuniary losses under general maritime law. *Spiller v. Thomas N. Lowe, Jr., and Associates, Inc.*, 466 F.2d 903, 908 (8th Cir.1972); *Green v. Ross*, 338 F.Supp. 365, 366 (S.D.Fla.1972), *aff'd*, 481 F.2d 102 (5th Cir.), *cert. denied*, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973). This court agrees with the results reached in those cases. The Death on the High Seas Act provides a more useful analogy in determining the class of beneficiaries than do state wrongful-death statutes. It seems desirable to have a uniform rule ensuring that the beneficiaries will be the same for identical torts. Stissi's stepchildren may have damages for their pecuniary losses, that is, loss of support and services, the latter including parental guidance and nurture. *See Sea-Land Services, Inc. v. Gaudet, supra*, 414 U.S. at 585, 94 S.Ct. at 815.

The *Sea-Land Services* case decided that general maritime law afforded a right to recover for loss of society. But apparently since that decision no case seeking damages for stepchildren has been reported. It is true that *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), pointed out that the Death on the High Seas Act allows damages only for pecuniary losses and refused to supplement the federal statutory remedy by permitting damages for loss of society. But the court recognized that this ruling meant that the measure of damages in coastal waters would differ from that on the high seas. *Id.* at 624, 98 S.Ct. at 2014. There thus seems to be no reason to suppose that the Supreme Court would differentiate between dependents in determining the right of recovery for loss of society. Indeed, to do so would be inconsistent with the Supreme Court's stated purpose "to

shape the remedy to comport with the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction." *Sea-Land Services, Inc. v. Gaudet, supra*, 414 U.S. at 588, 94 S.Ct. at 816.

This spirit appears to have animated the court in *Thompson v. Offshore Co.*, 440 F.Supp. 752 (S.D.Tex.1977), in deciding that certain financially independent family members could recover for loss of society. The court looked to factors such as the relationship of parent to child, continuous living together, harmonious family relationships, participation of the deceased in family services and his disposition and habit to tender aid, solace and comfort when required. 440 F.Supp. at 764–65. These were all present in Stissi's relationship with the stepchildren. They are entitled to damages for loss of society sustained as a result of his death.

## II

Sonat contends that the jury's apportionment is seriously erroneous under the decision of the Court of Appeals. Counsel for Furey as defendant opposes reapportionment on the ground that the jury's findings are supported by evidence substantially different at trial from that offered at the limitation proceeding. Although counsel for Furey as plaintiff urged at oral argument that he did have a right to jury trial, the court will treat the verdict as advisory.

Sonat also urges that Lax was not entitled to a jury trial, that the verdict should be viewed as advisory only, and that the court should reject the apportionment of liability and the award of damages to the Calabro children. Lax also agreed at oral argument that the verdict is advisory.

■ Once an admiralty court denies a petition for limitation or exoneration of liability, it may lift its injunction against prosecution of any other suits against the shipowners seeking limitation, leaving the claimants free to pursue their common law remedies. *In Re Wood's Petition*, 230 F.2d 197, 199 (2d Cir.1956); *Pershing Auto*

*Rentals, Inc. v. Gaffney*, 279 F.2d 546, 552 (5th Cir.1960).

### III

■ The jury's apportionment of liability was not seriously erroneous. In fact, this court agrees with the jury. The Court of Appeals did not reallocate the fault. Each of the alleged acts of negligence was thus left open to be relitigated.

The evidence at trial differed in significant ways from the evidence previously before the court. There was additional evidence concerning the lights on the tug. At the limitation proceeding the evidence did not reveal, as it did at the jury trial, that in addition to the three vertical lights displayed by the tug it was also carrying an additional light that at certain angles could be mistaken for a fourth vertical light. This could have caused Stissi to mistake the three mast lights signalling that a barge was in tow.

There was also further evidence as to Furey's and Stissi's previous boating experience, including a specific incident of Stissi's noticing and avoiding a tug and barge at night, showing Stissi's competence as a boat operator and Furey's knowledge of that competence.

Moreover, Stissi's expert, Captain Riley, testified at the trial that, given the improper lighting on the tug and the barge, Furey's failure to post a proper lookout could have been only a minor contributing cause to the collision. The court finds Captain Riley's testimony wholly credible. The court cannot say the same for the testimony of Sonat's expert, Captain Whalen. He advanced what seemed to the court a ridiculous opinion that the captain of the tug could not have seen the light on the Furey boat because it was rolling in the waves. Whalen's testimony was not credible.

This court was thus not bound by its prior determinations or the Court of Appeals' rejection of the 80%–20% allocation of fault based on the prior proceeding.

■ Sonat submits that errors in the court's charge caused the jury to make erroneous findings. First, as to the charge concerning the propriety of the aforementioned additional light on the tug, the court confirms its ruling at trial construing Articles 1 and 3 of the Inland Rules to prohibit the tug's carrying of any lights that could be mistaken for the vertical mast lights indicating the towing of a vessel astern. The court so charged the jury. Article 2 of the Rules is inapplicable.

■ Second, Sonat contends that the court should have charged that it is "inexcusable negligence," rather than "negligence," to cross behind the stern of a towing vessel without knowing the position of the tow when the mast lights indicate the existence of a tow. It is true that the Court of Appeals used the term "inexcusable negligence." 717 F.2d at 754. However, use of the word "inexcusable," when instructing the jury as to the law of negligence, would only serve to confuse or distract. As the Second Circuit has stated, in approving a trial court's refusal to charge that the defendant owed plaintiff "very great care," charging instead that defendant owed "reasonable care under the circumstances":

> "We think that the charge was right. 'Very great care' is an unmeaning phrase, and the jury in determining what was reasonable care with reference to the circumstances would necessarily determine whether it was great or very great."

*Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 171 (2d Cir.1983) (quoting *Pratt v. North German Lloyd S.S. Co.*, 184 F. 303, 304 (2d Cir.1911)).

Similarly, the jury here was required to determine whether Stissi was negligent in trying to pass behind the tug, and, if so, to what extent that contributed to the collision. The term "inexcusable" would have had no meaning as to either of these determinations.

■ Finally, Sonat argues that the court erred in failing to charge Article 27 of the Inland Rules, which allows departure from the rules when necessary to avoid immedi-

ate danger. The contention is that the jury might have found that Captain Wilkins decided, in the limited time he had, to place the engine controls in an idle position, rather than sound the danger signal, as was required by 33 U.S.C. § 203, Rule III, to avoid immediate collision. Failure to charge this "general prudential rule" is at most harmless error, since the court charged Section 80.11 of the Pilot Rules which allows departure from those rules under the same circumstances.

■ The jury's findings are not erroneous. As to Stissi, they cannot be set aside. Furthermore, the percentages of fault allocated to each of the negligent parties are fully supported and justified by the evidence. The court adopts the jury's allocation of fault in full.

### IV

The jury awarded to the Calabro children $257,574 for past and future loss of support and services and $280,000 for past and future loss of society. Sonat urges the court to reject both figures as excessive.

■ According to Sonat's calculations, the support award exceeds by almost $2000 the maximum amount possible under Lax's economist's testimony; this is Sonat's sole basis for arguing that the award is excessive. The jury, however, was not bound by the expert's conservative estimates. It could well have found, based on all the evidence of past and future earnings and services that the lost support exceeded those estimates by $1997. The court therefore adopts this finding.

■ As to lost society, Sonat argues that such awards are primarily symbolic and should not constitute a substantial portion of the total damage award, citing dictum in *Mobil Oil Corp. v. Higginbotham, supra.* In that case, the Supreme Court noted:

> It remains to be seen whether the difference between awarding loss-of-society damages under *Gaudet* and denying them under DOSHA has a great practical significance. It may be argued that the competing views on loss of society ... can best be reconciled by allowing an award that is primarily symbolic, rather than a substantial portion of the survivors' recovery. We have not been asked to rule on the propriety of the large sums that the District Court would have awarded in this case.

436 U.S. at 624 n. 20, 98 S.Ct. at 2014 n. 20. This language obviously does not mandate that awards for loss of society be minimal. The fact that the damages for the Calabro children far exceed those awarded the Stissi children is hardly significant. The evidence differed as to each parent and each child. Indeed, it is difficult "to equate one personal injury award with another." *Batchkowsky v. Penn Central Co.*, 525 F.2d 1121, 1125 (2d Cir.1975).

The testimony as to the love, attention, companionship, comfort and guidance provided the two daughters by their mother supports the award. The court therefore adopts the jury's finding of damages for loss of society.

### V

■ Lax contends that the jury's award of $30,000 for Ruth Calabro's conscious pain and suffering prior to her death—by cardiopulmonary arrest due to drowning—is inadequate compared to other cases with similar circumstances. She argues that the testimony of Dr. Daniel McCarthy, a pathologist who did not perform the autopsy, showed that the decedent was probably conscious for forty-seven to forty-nine minutes after the motorboat capsized and that she sustained mental pain and suffering in that time.

As noted above, it is difficult to compare the personal injuries suffered by different individuals. In any event, while Lax cites cases of high awards for pain and suffering, there have been awards similar to that made here. *See, e.g., Smith v. Eastern Seaboard Pile Driving, Inc.*, 1978 AMC 2068, 2081 (E.D.N.Y.1978) ($10,000 for 10 to 15 minutes in water prior to death by asphyxiation).

Ruth Calabro's suffering is not susceptible of precise calculation. Dr. McCarthy, although he explained the autopsy report, testified that there was no physical injury suffered by Calabro. There was no testimony about the emotional strain that a person who fears that she is drowning may experience. The award seems to the court fair under the evidence. The court therefore adopts the jury's finding.

## VI

Finally, Stissi and Lax seek prejudgment interest on their awards for past losses, not including Lax's award for pain and suffering. Sonat's position is that there is no right to such interest when a plaintiff is entitled to a jury trial. Sonat presumably does not contest Lax's motion since the court has ruled that the jury was advisory as to her.

■■■■ Prejudgment interest is awarded to make whole the injured party. *Independent Bulk Transport v. Vessel "Morania Abaco"*, 676 F.2d 23, 27 & n. 1 (2d Cir.1982) (Newman, J., concurring). It is an abuse of discretion to deny prejudgment interest in admiralty cases except under extraordinary circumstances. *Id.* at 25. The court has broad discretion, however, to determine when interest commences and what rate of interest applies. *Id.*

Sonat cites dictum from *Moore-McCormack Lines, Inc. v. Richardson*, 295 F.2d 583, 594 (2d Cir.1961), *cert. denied*, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962), stating that courts have refused to award interest in jury cases because "a jury usually makes some allowance for loss caused by delay."

Here, the court did not charge the jury to consider, in awarding damages, the time that had elapsed since the date of the accident. *See Johnson v. A/S Ivarans Rederi*, No. 75-2225 (D.Mass. Feb. 6, 1979), *aff'd*, 613 F.2d 334 (1st Cir.1980), *cert. dismissed*, 449 U.S. 1135, 101 S.Ct. 959, 67 L.Ed.2d 325 (1981). The court does not presume that the jury departed from the instructions as to the elements of damages properly awardable.

■■ The fact that those admiralty decisions addressing the award of prejudgment interest were rendered in cases tried to the court is no indication that such interest is to be denied following a jury trial. The court concludes that it may award prejudgment interest in this case brought pursuant to general maritime law.

No extraordinary circumstances exist here to justify denying interest. The plaintiffs have not been responsible for the long delays that have plagued this litigation since institution of the first action in 1980. Plaintiffs timely filed their suits. Sonat caused delays when it petitioned for the limitation proceeding, appealed this court's initial decision and petitioned the Court of Appeals for a writ of mandamus to prevent the court from proceeding with a jury trial. Furthermore, Sonat's substantial fault and the rights of Stissi and Lax to recover damages from Sonat have been evident to this court since the time of the limitation proceeding. These considerations warrant the exercise of the court's discretion to award interest from the date of the collision. *See Mitsui & Co. v. American Export Lines*, 636 F.2d 807, 823 (2d Cir.1981); *Independent Bulk Transport v. Vessel "Morania Abaco"*, *supra*, 676 F.2d at 26–27.

The court further finds that 12% is the appropriate rate of interest to compensate plaintiffs for their loss of income during the prejudgment period, August 22, 1980 to the date of entry of judgment. *See id.* at 27; *Champion International Corp. v. S.S. Lash Pacifico*, 569 F.Supp. 1557, 1561 (S.D. N.Y.1983).

## VII

Based on the foregoing, Sonat's motion for a new trial under Federal Rule of Civil Procedure 59 is denied, Sonat's motions to strike the Depalo damages, reject the advisory verdict and reallocate fault are denied, Lax's motion to increase the award of damages is denied, and Stissi's and Lax's motions for prejudgment interest are granted.

The court adopts the advisory jury's findings in full. This memorandum constitutes the court's findings of fact and conclusions of law.

The parties should submit a proposed judgment or proposed judgments prior to noon, August 3, 1984.

So ordered.