Barbara STISSI, Individually and as Personal Representative of the Estate of Ronald Stissi, Deceased, Plaintiff-Appellee,

v.

INTERSTATE AND OCEAN TRANS-
PORT CO. OF PHILADELPHIA,
Defendant.

In the Matter of the Complaint of INTER-
STATE TOWING CO., as Owner of the tug Delaware, Interstate Marine Transport Co., as Owner of the barge Interstate 36, and Interstate and Ocean Transport Co., as Bareboat Charterer of the barge Interstate 36, and the tug Delaware, Plaintiffs for Exoneration from or Limitation of Liability.

Judith LAX, as Administratrix of the Estate of Ruth Calabro, Deceased, Plaintiff-Appellee,

v.

INTERSTATE TOWING CO., as Owner of the tug Delaware, Interstate Marine Transport Co., as Owner of the barge Interstate 36, and Sonat Marine, Inc.,

formerly known as Interstate and Ocean Transport Co., as Bareboat Charterer of the barge Interstate 36, and tug Delaware, Defendants,

Sonat Marine, Inc., Defendant-Appellant
Cross-Appellee.

Thomas J. FUREY, Plaintiff-Appellee
Cross-Appellant,

v.

INTERSTATE TOWING CO., as Owner of the tug Delaware, Interstate Marine Transport Co., as Owner of the barge Interstate 36, and Sonat Marine, Inc., formerly known as Interstate and Ocean Transport Co., as Bareboat Charterer of the barge Interstate 36, and tug Delaware, Defendants,

Sonat Marine, Inc., Defendant-Appellant
Cross-Appellee.

Cal. Nos. 650, 760, Dockets
84–7699, 84–7735.

United States Court of Appeals,
Second Circuit.

Argued Jan. 21, 1985.

Decided June 20, 1985.

James M. Hazen, New York City (Leonard & Kenny, New York City, of counsel), for defendant-appellant cross-appellee Sonat Marine, Inc.

Edward F. Gerace, Tampa, Fla., for plaintiff-appellee Barbara Stissi.

David Holmes, Merrick, N.Y. (Curtis, Zaklukiewicz, Vasile & Devine, Merrick, N.Y., of counsel), for plaintiff-appellee cross-appellant Thomas J. Furey.

James S. Rowen, New York City, for plaintiff-appellee cross-appellant Thomas J. Furey.

Jesse S. Waldinger, New York City (Kramer, Dillof, Tessel, Duffy & Moore and Charles F. McGuire, New York City, on the brief), for plaintiff-appellee Judith Lax.

Before VAN GRAAFEILAND, MES-KILL, and WINTER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal and cross appeal from a judgment of the United States District Court for the Eastern District of New York (Nickerson, J.) apportioning fault and fixing damages in connection with a collision between a motorboat and a barge which occurred on Long Island Sound on August 22, 1980. Because this appeal follows a second trial and two reported opinions, one by this Court, 717 F.2d 752, and one by the district court, 590 F.Supp. 1043, there is no need for an extended recital of the facts. The accident occurred at night when Thomas Furey's motorboat, operated by Ronald Stissi with Furey and Ruth Calabro as passengers, attempted to cross the wake of the tugboat DELAWARE. The motorboat fouled its propeller on the DELAWARE's tow line and was struck by the barge that the DELAWARE was towing. Stissi and Calabro died as a result of the collision, and their respective estates are represented by Barbara Stissi and Judith Lax. The DELAWARE was chartered to Sonat Marine, Inc., formerly Interstate and Ocean Transport Co.

On the prior appeal, we affirmed in part and vacated in part Judge Nickerson's decision apportioning 80% of the fault for the collision to the tug and barge and 20% of the fault to the Furey boat. We held that the district court was correct in denying Sonat's and Furey's request for exoneration from, or limitation of, liability but concluded that the district court had erred in assessing only 20% of the fault to the Furey boat. Upon remand, the district court consolidated the claims for trial before a jury, the jury's verdict in the Lax and Furey actions to be advisory only. The district court held that Stissi was entitled to a binding verdict because she had elected to invoke the savings to suitors clause, 28 U.S.C. § 1333, during the first trial.

Following a six-day trial, the jury found Sonat 94% at fault, Stissi 3% at fault, and Furey 3% at fault. The jury also fixed damages in the amount of $1,110,024 for Stissi, $567,574 for Lax and $40,000 for Furey. Thereafter, the district court adopted the jury's findings on both apportionment and damages. 590 F.Supp. at 1050.

Sonat argues on this appeal that the district court erred in retrying the issue of apportionment of fault instead of reconsidering that issue on the record of the first trial. We disagree; our mandate did not preclude a retrial. However, the district court did err in disregarding certain legal conclusions reached on the first trial and appeal, which should not have received *de novo* consideration. For reasons hereafter discussed, the issue of apportionment of fault will have to be tried a third time.

In 1980, a tug such as the DELAWARE, which had another vessel in tow, was required by then-current federal navigation rules to carry certain lights. One of these rules, 33 U.S.C. § 173 (1976), provided that the tug should "in addition to her side lights" carry three bright lights not less than three feet apart in a vertical line. Section 173 also provided, by reference to 33 U.S.C. § 172(a) and (f) (1976), that these lights should be carried "on or in front of the foremast, or, if a vessel without a foremast, then in the forepart of the vessel" (§ 172(a)), or, alternatively, in the same position that the after range single light would occupy on a vessel containing only a two-white-light central range (§ 172(f)).

There is no dispute as to the lights carried by the DELAWARE on the night of the accident. The evidence as to the lights was identical on both trials; the tugmaster's and Coast Guard's descriptions of the lights, as given on the first trial, were read into evidence on the second. At the conclusion of the first trial, the district court held that "the tug was exhibiting the lights required by Article 3 of the Inland Rules [33 U.S.C. § 173] for a tug towing a barge astern, namely a white bow light, port and starboard running lights, three vertical bright white lights and an optional stern light." This Court agreed. 717 F.2d at

754. These were not findings of fact; they were conclusions of law.

▮▮▮ When a decision turns on the meaning of words in a statute or regulation, the decision is one of law which must be made by the court. *Trust of Bingham v. Commissioner*, 325 U.S. 365, 371, 65 S.Ct. 1232, 1235, 89 L.Ed. 1670 (1945); *Day v. Trans World Airlines, Inc.*, 393 F.Supp. 217, 220 (S.D.N.Y.), *aff'd*, 528 F.2d 31 (2d Cir.1975), *cert. denied*, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976); *Gaibis v. Werner Continental, Inc.*, 565 F.Supp. 1538, 1548 (W.D.Pa.1983). The application of a statute's terms to undisputed facts also is a question of law. *Gold Kist, Inc. v. United States*, 339 F.Supp. 1249, 1255 n. 6 (N.D.Ga.1971), *aff'd sub nom., ICC v. Gold Kist, Inc.*, 409 U.S. 808, 93 S.Ct. 106, 34 L.Ed.2d 67 (1972); *United States v. Thompson*, 252 F.2d 6, 9 (8th Cir.1958); *see Nelson v. Montgomery Ward & Co.*, 312 U.S. 373, 376, 61 S.Ct. 593, 595, 85 L.Ed. 897 (1941); *Dowell, Inc. v. Lyons*, 238 F.2d 633, 635 (6th Cir.1956); *Coleman Furniture Corp. v. Home Insurance Co.*, 67 F.2d 347, 351 (4th Cir.1933).

▮▮▮ The district court's legal conclusions concerning the tug's compliance with Article 3, which were approved and adopted by this Court, thus became the law of the case and should have been followed by the district court on the second trial. *Doe v. New York City Department of Social Services*, 709 F.2d 782, 788–89 (2d Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Instead of adhering to this well-established rule, the district court permitted Richard Riley, a tugboat captain for the Texaco Company, to hold forth erroneously and at great length concerning the allegedly mandatory lighting requirements for a tug with tow astern on Long Island Sound. The end result was prejudicial and reversible error.

On six separate occasions, Riley, without referring to any specific rule or regulation, testified that the DELAWARE should have carried a yellow light on the stern; this, he said, was "mandatory". He testified that, because this light was absent, a pilot in Mr.

Stissi's position "probably would be confused". It was only after Stissi's counsel informed the district court that Riley himself was confused about the yellow light that the district court told the jury a yellow light was unnecessary.

▮▮▮ Assuming for the argument that Riley's error with reference to the yellow light was cured by the court's instructions, another more egregious error concerning the forward range light never was cured. Although the testimony and the photographs introduced on the first trial clearly established the presence and location of the white bow or range light, and the existence of this light was approved specifically by both the district court and this Court, Riley testified that the light was improper. What's more, he convinced the district court to overturn, not only its own prior ruling to the contrary, but also the holding of this Court, which, as stated above, established the law of the case.

The district court attempted to justify its ruling, stating that the evidence on the first trial "did not reveal, as it did at the jury trial, that in addition to the three vertical lights displayed by the tug it was also carrying an additional light that at certain angles could be mistaken for a fourth vertical light" and that "[t]his could have caused Stissi to mistake the three mast lights signalling that a barge was in tow." 590 F.Supp. at 1047. In making this statement, the district court erred, not once, but twice.

In the first place, even the most casual observer of the photograph of the bow of the DELAWARE, which was in evidence on both trials, could not help but see that, when viewed from directly ahead of the vessel, the forward range light would be directly in line with the three mast lights behind it. In the second place, the evidence is uncontroverted that Stissi never was directly in front of the tug so as to have this view.

▮▮▮ Unfortunately, these errors were reflected in the district court's instructions to the jury. The judge charged the jury that,

pursuant to Article 3 of the Inland Water Rules (33 U.S.C. § 173), the DELAWARE was required to carry three white lights on its mast but that, under Article 1 of those Rules (33 U.S.C. § 171), the DELAWARE was not permitted to carry other lights which might be mistaken for the prescribed lights. Even if we had not already established the law of the case with reference to the forward range light, we would hold that the presence of this light was proper and not in violation of the applicable rules.

An understanding of why this is so requires some knowledge of the nature and purpose of the so-called range lights, whose history antedates that of the red and green side lights. *See Belden v. Chase*, 150 U.S. 674, 694, 14 S.Ct. 264, 270, 37 L.Ed. 1218 (1893). Ordinarily, range lights consist of two white lights in the same vertical plane as the keel of a vessel, with the rear range light higher than the forward one. By observing the relative position of these two lights, the lookout on an approaching ship can readily determine the course of the light-bearing vessel. As one commentator puts it:

Range lights are a valuable aid in determining the relative heading of another vessel when she is first sighted at night. These white lights are both brighter and higher than the side lights, and consequently they normally will be seen well before the colored light or lights can be detected and read for their meaning.

The relative location of the two range lights will be the key. Should they be seen one directly over the other, the other vessel is headed *directly toward* the observer and danger of collision exists. Should the lower forward range light be seen to the right or left of the higher light, the other vessel is on an oblique course and the angle can be roughly gauged by the horizontal separation between the lights.

Charles F. Chapman, *Piloting, Seamanship and Small Boat Handling* 64(d).

Judicial comment is in accord:

The rule for inland waters and narrow channels differs in one respect from that for open waters. It not only requires the two colored side lights, but it requires the two white range lights, to be up and burning. The red and white side lights only show in what *general direction* the steamer is going; they do not show with accuracy *the course* held by the steamer moving in that general direction. In narrow waters it is necessary to safety that this *course* shall be known; and the high light aft, and the lower light forward, fixed on a range with the center of the vessel, as required by rule 7, shows this *course*.

These two sorts of lights are probably more important in narrow channels than the red and white lights. They are both essential. It is for this reason that every steamer navigating narrow waters at night is required to have these lights up. If a steamer has them not it is in fault; it is grossly in fault.

*The Conoho*, 24 Fed. 758, 760 (E.D.Va. 1885).

As of the date of the accident, section 172(a) provided that a steam vessel, such as a tugboat, under way should carry a white light in its bow. Section 172(f) provided that such vessel should carry a central range of two white lights, the afterlight being carried at an elevation at least fifteen feet above the light at the head of the vessel. Section 173 provided that a tug towing one or more vessels astern should carry three vertical lights in the same position as the after range light mentioned in section 172(f). The purpose of requiring those lights to be placed in this position seems clear; if an approaching vessel was so located that the forward range light was directly below the three mast lights, the approaching vessel would know that it was on a direct collision course with the tug. Of course, since the Furey boat never was directly ahead of the DELAWARE so that the lights would be observed in this manner, the district court's comments concerning possible confusion were simply academic.

We are as satisfied now as we were at the conclusion of the first trial that there

was nothing improper about the lights on the DELAWARE. The district court's holding to the contrary, 590 F.Supp. at 1047, was error.

■ Because the issue of fault must be retried, it is appropriate that we comment briefly concerning certain matters that are likely to recur. As the district court correctly stated, what the nautical rules say was a matter for it to decide. It was not Riley's function to testify as to what the rules required or prohibited. The district court therefore should not have permitted Riley to give the jury his version of the rules. The prejudice resulting from the disregard of this evidentiary rule as it related to the lighting on the tug already has been discussed. Enforcement of the rule also would have precluded Riley from telling the jury that, when the Furey boat was seven-tenths of a mile away, "by law" its lights would have been visible to a vigilant lookout on the tug; that the blowing of a danger signal was "mandatory"; that a rule which Riley did not deign to identify required that the tug's whistle be heard "in all directions", "astern as well as ahead"; and that when the DELAWARE backs up, it is required "by law" to sound a whistle. The effect that testimony of this kind has on a jury seldom is eliminated by a cursory curative statement that the jury is to take the law from the court, particularly where, as here, the court fails to give its own version of the legal pronouncements that the witness has made.

■ On the other hand, the district court did not abuse its discretion in redacting the double hearsay and conclusory portions of the Coast Guard report. See City of New York v. Pullman, Inc., 662 F.2d 910, 914–15 (2d Cir.1981), cert. denied, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982); Lindsay v. Ortho Pharmaceutical Corp., 637 F.2d 87, 94 (2d Cir.1980). Because Sonat disputed the feasibility of shortening the 1000-foot hawser, the district court likewise acted within its discretion in permitting evidence to be introduced that the hawser was shortened following the accident. See Anderson v. Malloy, 700

F.2d 1208, 1212–14 (8th Cir.1983). Finally, the district court did not err in admitting testimony concerning a prior incident when Stissi, operating Furey's boat, observed and heeded the warning of a tug showing three towing lights. See United States v. Smith, 727 F.2d 214, 219–21 (2d Cir.1984). This evidence bore on the question whether Furey permitted an inexperienced pilot to operate his boat. Moreover, even if its admission was error, it was not prejudicial error. The more knowledgeable Stissi was concerning nautical signals, the more negligent he was in ignoring the warning lights that the DELAWARE showed on the night of the accident.

■ Turning to the charge, we do not believe the district court erred in refusing to incorporate the statement from this Court's prior opinion that crossing the wake of a tug displaying towing lights, such as were shown here, is "inexcusable negligence" justifying a finding that the motorboat operator was "grossly at fault". Because appellate opinions are designed for a different purpose than are jury instructions, it sometimes is not advisable to incorporate language from the former directly into the latter. See Howland Pulp & Paper Co. v. Alfreds, 179 Fed. 482, 484 (1st Cir.1910); Devitt and Blackmar, Federal Jury Practice and Instructions § 8.01 at 243. Moreover, language such as "inexcusable negligence" and "grossly at fault" may tend to confuse or mislead the jury. See Rainey v. Paquet Cruises, Inc., 709 F.2d 169, 171 (2d Cir.1983). The district court correctly charged that "where mast lights indicate the existence of a two, it is negligence to cross behind the stern of the towing vessel without knowing the position of the tow."

■ Sonat was entitled, however, to have the jury instructed pursuant to former Article 27 of the Inland Water Rules, 33 U.S.C. § 212 (1976) that, in obeying the Rules, the DELAWARE should take into consideration "any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger." Because a new trial is

to be had in any event, we need not decide whether, in view of the court's charge on the somewhat similar provisions of section 80.11 of the Pilot Rules, 33 C.F.R. § 80.11 (1980), the failure to charge Article 27 was harmless error.

The district court did not err in treating the jury's findings with respect to Furey in an advisory capacity. Furey waived his right to a jury trial by failing to request one at the outset of the limitation proceeding. *See Noonan v. Cunard Steamship Co.,* 375 F.2d 69 (2d Cir.1967). The district court did not err in holding Furey and Sonat jointly liable to Lax for the entire amount of Lax's damages. During the limitation proceeding, Lax had asserted a cross-claim against Furey. Although this Court subsequently affirmed the denial of exoneration and limitation, 717 F.2d at 757, the district court, sitting as an admiralty court, retained jurisdiction to adjudicate all claims arising out of this proceeding, including Lax's cross-claim against Furey. *See Hartford Accident & Indemnity Co. v. Southern Pacific Co.,* 273 U.S. 207, 216–18, 47 S.Ct. 357, 359–60, 71 L.Ed. 612 (1927); *see also British Transport Commission v. United States,* 354 U.S. 129, 138, 77 S.Ct. 1103, 1108, 1 L.Ed.2d 1234 (1957).

Although we are reversing and remanding on the issue of fault, we see no need for a retrial on the issue of damages. The damage awards were not so grossly excessive that they should not be permitted to stand. The award to Stissi's stepchildren was not improper. *See Spiller v. Thomas M. Lowe, Jr. and Associates, Inc.,* 466 F.2d 903, 904–08 (8th Cir.1972). The court did not err in allowing prejudgment interest on the awards to Stissi and Lax. *Independent Bulk Transport, Inc. v. Vessel "Morania Abaco",* 676 F.2d 23, 25 (2d Cir.1982); *Mitsui & Co., Ltd. v. American Export Lines, Inc.,* 636 F.2d 807, 823 (2d

Cir.1981). Finally, the court did not err in refusing to impute Stissi's contributory negligence to Furey in determining the amount of Furey's contribution toward Stissi's damages. *See Red Star Towing & Transportation Company v. Cargo Ship "Ming Giant",* 563 F.Supp. 224, 226 (S.D. N.Y.1983); *Shiver v. Burnside Terminal Company,* 392 F.Supp. 1078, 1079 (E.D.La. 1975).

We affirm that portion of the judgment which fixed the amount of plaintiffs' damages but vacate that part which apportioned fault between the parties, and remand for further proceedings not inconsistent with this opinion.[1]

No costs.

---

1. In view of Judge Nickerson's statement that he agreed with the jury's apportionment of liability, 590 F.Supp. at 1047, a question might be raised concerning the wisdom of returning this case to the same judge for a third trial. However, we have every confidence that Judge Nickerson will fairly try the issue of apportionment on the evidence properly introduced on the third trial, and what we have held to be the law of the case concerning the lights on the tug.