814 F.2d 848
 1987 A.M.C. 1441, 55 USLW 2513
 Barbara STISSI, Individually and as Personal Representative
of the Estate of Ronald Stissi (Deceased), Judith Lax as
Administratrix of the Estate of Ruth Calabro (Deceased), and
Thomas J. Furey, Plaintiffs,
v.
INTERSTATE & OCEAN TRANSPORT CO. OF PHILADELPHIA, Interstate
Towing Co. as owner of the Tug Delaware, Interstate Marine
Transport Co. as owner of the Barge Interstate 36 and Sonat
Marine Inc., formerly known as Interstate & Ocean Transport
Co. as Bareboat Charter of the Barge Interstate 36 and Tug
Delaware, Defendants.
Alvin L. STERN, Esq., Appellant,
v.
Edward F. GERACE, Esq., Appellee.
 No. 823, Docket 86-7975.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 20, 1987.
Decided March 10, 1987.
 
 Thomas E. Stiles, New York City (Stephen X. Wright, and Nourse & Bowles, New York City, on the brief), for appellant Stern.
 Roman Badiak, New York City (Edward F. Gerace, and Badiak & Will, New York City, on the brief), for appellee Gerace.
 Before TIMBERS, VAN GRAAFEILAND and PRATT, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 Appellant Alvin L. Stern ("Stern"), an attorney, appeals from an order entered October 17, 1986 in the Eastern District of New York, Eugene H. Nickerson,District Judge, which divided unequally certain attorneys' fees between Stern and appellee Edward F. Gerace ("Gerace"), also an attorney.
 
 
 2
 The dispute over attorneys' fees leading to the instant appeal arose out of the joint representation by Stern and Gerace of Barbara Stissi ("Barbara") in her wrongful death action against Interstate & Ocean Transport Co. of Philadelphia and others resulting from the death of her husband, Ronald Stissi ("Ronald"), in a boating accident. Before the commencement of that action, Stern and Gerace agreed to represent Barbara on a one-third contigent fee basis and agreed orally to divide equally any "fees, costs and disbursements as well as responsibility". A letter from Gerace to Stern setting forth these terms memorialized their agreement.
 
 
 3
 The wrongful death action resulted ultimately in a judgment for Barbara in excess of $1.19 million. A dispute arose between Gerace and Stern as to the appropriate division of the resulting attorneys' fee. Stern filed a motion in the district court seeking an equal division of the fee based on the fee agreement. After an evidentiary hearing on Stern's motion, the court awarded Gerace and Stern, respectively, approximately 58% and 42% of the fee. The court made that division based on the amount of time each attorney had devoted to the prosecution of Barbara's claim.
 
 
 4
 On appeal, Stern claims that the district court erred in dividing the fee based on the time each attorney contributed rather than on an equal basis as provided in the fee agreement. We agree.
 
 
 5
 We hold that the district court erred when, faced with an express contract, it nevertheless proceeded to apportion the attorneys' fees on the basis of work done. Where, as here, there was no breach of that express contract, such a quantum meruit approach has no basis either in the law of contracts or the record before the district court.
 
 
 6
 We reverse.
 
 I.
 
 7
 On two previous occasions we have set forth facts relevant to Barbara's wrongful death action. Stissi v. Interstate and Ocean Transport Co., 765 F.2d 370 (2 Cir.1985) (Van Graafeiland, J.); In re Interstate Towing Co., 717 F.2d 752 (2 Cir.1983) (Van Graafeiland, J.); see also Stissi v. Interstate and Ocean Transport Co., 590 F.Supp. 1043 (E.D.N.Y.1984) (Nickerson, J.). We assume familiarity with those opinions. We shall summarize here only those additional facts believed necessary to an understanding of the issue raised on the instant appeal.
 
 
 8
 Both Stern and Gerace are attorneys admitted to practice law in the State of New York. At some point prior to the events leading to the instant appeal, Gerace was associated with a New York law firm of which Stern was a partner. By August 1980, Gerace was practicing law in Florida, and Stern had his own private practice in New York. Stern's practice consisted largely of prosecuting and defending personal injury and wrongful death actions arising out of admiralty accidents.
 
 
 9
 Ronald's boating accident occurred on August 22, 1980. On August 24, Barbara's father-in-law telephoned Gerace, who is Barbara's cousin, to inform him of the accident and to seek advice regarding a possible law suit. Gerace arranged to meet with Barbara in New York. In mid-September, Gerace telephoned Stern, requesting him to attend the meeting and suggesting that, in view of Stern's expertise in admiralty law, he could be local counsel if Barbara decided to assert a wrongful death claim.
 
 
 10
 At the meeting on September 26, 1980, Barbara signed a retainer agreement naming both Gerace and Stern as her attorneys. Under the retainer agreement, they were to prosecute Barbara's wrongful death action on a contingent fee basis. After Barbara signed the retainer agreement, Gerace and Stern discussed and agreed how the fee should be divided in the event that the action was successful.
 
 
 11
 In a letter to Stern dated October 1, 1980, Gerace put in writing the terms of the fee arrangement. The letter stated in pertinent part:
 
 
 12
 "As agreed, we will handle this case on a [sic] equal division of fees, costs and disbursements as well as responsibility."
 
 
 13
 Neither party to the instant appeal disputes that the letter reflected the terms of the oral agreement; rather, the dispute concerns the interpretation of the words used by the parties and the effect, if any, of that interpretation on the appropriate division of fees.
 
 
 14
 Barbara's wrongful death action was commenced October 20, 1980. Stern filed a notice of appearance and was listed as the attorney of record. After three trials and two appeals, the wrongful death action resulted ultimately in a judgment for Barbara, entered November 22, 1985, in the amount of $1,190,439.51, including interest. The defendants in the wrongful death action deposited that amount in the registry of the district court on January 17, 1986.
 
 
 15
 On January 28, 1986, Gerace filed a motion in the district court to disburse the entire amount of the judgment to him "as attorney for Barbara". Alternatively, Gerace moved to disburse two thirds of that amount to him in the event that Stern "intervene[s] to claim an attorney's charging lien".
 
 
 16
 In an order filed February 7, 1986, the district court directed the clerk of the court to disburse two thirds of the amount of the judgment to Gerace as Barbara's attorney. The court also granted Stern leave "to intervene in the proceedings" and "retaine[d] jurisdiction of this dispute to resolve the competing attorneys' claims concerning the fee distribution in this case."
 
 
 17
 Stern filed a petition for "leave to intervene" on February 7, 1986. On March 21, he filed a motion seeking the entire amount of the fee then on deposit in the court's registry or, in the alternative, one half of that amount, less certain expenses incurred by Gerace.
 
 
 18
 In a memorandum and order filed September 17, 1986, the district court stated that "the terms of the agreement in this case are not wholly unambiguous, and the court will require extrinsic evidence to clarify the intent of the parties when they agreed to 'handle this case on an equal division of ... responsibility.' "
 
 
 19
 On October 3, 1986, the court held an evidentiary hearing on Stern's motion. As exhibits, Stern and Gerace submitted lists of the hours each claimed to have worked on Barbara's action. Both Stern and Gerace testified. It appeared from the testimony at the hearing that Stern and Gerace had contributed substantially, but not precisely, equivalent numbers of hours to Barbara's action until February 1983. At that time, Gerace had attempted to communicate with Stern in connection with the preparation of a brief to be submitted to our Court, only to discover that Stern was out of town performing certain legal services for his new employer, an insurance company. This occurrence apparently disenchanted Gerace with Stern. As a result, Gerace thereafter referred less and less work relating to Barbara's action to Stern, despite Stern's willingness to devote more time to the action, and despite Stern's protestations to Gerace to that effect. Nevertheless, it appeared that Stern continued to work on Barbara's action, only to a lesser extent than did Gerace.
 
 
 20
 In an order entered October 17, 1986, the district court directed the clerk of the court to disburse as an attorney's fee to Gerace 58.265241986% of the amount then on deposit in the court's registry with the balance of that amount (41.734758013%) to be disbursed to Stern.
 
 
 21
 This appeal followed.
 
 
 22
 For the reasons set forth below, we reverse the order of the district court and remand the case to that court with directions to order that the attorneys' fees be divided equally between Stern and Gerace.
 
 II.
 
 23
 Contractual duty is imposed by reason of an expression of promise. If such expression is made, then an express contract is formed. An express contract was entered into between Stern and Gerace by their oral agreement which was memoralized by Gerace in his letter to Stern.
 
 
 24
 The contract between the attorneys contained the term "responsibility". The district court considered that term to be ambiguous and therefore held a hearing to determine the intent of the parties at the time they contracted. See Grand Union Co. v. Cord Meyer Development Corp., 735 F.2d 714, 717 (2 Cir.1984) (Since agreement is ambiguous, parties must be permitted to present extrinsic evidence of intent).
 
 
 25
 At the hearing, Stern testified that he intended "responsibility" to mean "accountability" to his client, Barbara. He testified further that he did not interpret the word "responsibility" to require an "equal devotion of time". Gerace testified that the use of the word "responsibility" had been his decision and was used in order to comply with the Canons of Ethics. He stated that he had used the term "as a word of art."
 
 
 26
 At the conclusion of the hearing the district court found that "responsibility" included "responsibility to the client", i.e., accountability and "work". This finding is not clearly erroneous; it simply does not support the legal conclusion drawn from it by the district court. There was no claim before the court that the work ever could have been divided precisely on a fifty-fifty basis. It therefore was reasonable to believe that the parties must have contemplated some deviation from mathematical precision with respect to the work. The court, therefore, had before it an express contract for compensation in which the parties agreed to an equal division of fees which was related, but not inextricably tied, to the work performed. It is an elementary principle of contract law that, where there exists an express contract for compensation, an action outside that contract will not lie. We hold that the district court erred when, faced with an express contract, it nevertheless proceeded to apportion the attorneys' fees on the basis of work done--essentially, a quantum meruit approach.
 
 
 27
 There is support for our holding under New York law. It has been well established by the New York courts that "an agreement between attorneys for division of a legal fee is valid and is enforceable in accordance with the terms set forth in the agreement, provided that the attorney who seeks his share of the fee contributed some work, labor or service toward the earning of the fee". Oberman v. Reilly, 66 A.D.2d 686, 687, 411 N.Y.S.2d 23, 25 (1st Dep't. 1978) (emphasis added), leave to appeal dismissed mem., 48 N.Y.2d 602, 396 N.E.2d 205, 421 N.Y.S.2d 1026 (1979). In Jontow v. Jontow, 34 A.D.2d 744, 744-45, 310 N.Y.S.2d 145, 146-47 (1st Dep't. 1970), the court held that, "[i]n view of the fact that there was a written agreement between the appellant and the respondent to divide their fee equally, and the fact that the appellant did perform services for the plaintiff, it was error for the trial court to set the fees in question on a quantum meruit basis". See also Sterling v. Miller, 2 A.D.2d 900, 901, 157 N.Y.S.2d 145, 146-47 (2d Dep't. 1956), aff'd, 3 N.Y.2d 778, 143 N.E.2d 789, 164 N.Y.S.2d 32 (1957).
 
 
 28
 In the instant case the agreement between Stern and Gerace was to handle the case on the basis of an equal division of fees and responsibility, which the court found meant accountability and "work". Justice therefore required the district court to bind the parties by this legally valid agreement unless the agreement was vitiated by a breach by Stern of his obligation for equal "responsibility". The evidence is clear, however, that Stern was accountable and did not abandon the case. On the contrary, the record is replete with evidence of Stern's contributions to the prosecution of Barbara's lawsuit. There also was no finding by the district court that Stern breached the intent of the parties with respect to the "responsibility" provision. Consequently, there was no breach of the contract which could serve as a basis for resorting to the quantum meruit approach adopted by the district court.
 
 
 29
 It is noteworthy that there are no ethical considerations which prevent the payment of attorneys' fees in this case in equal amounts. As stated above, Gerace testified that he was cognizant of the Canons of Ethics when he used the term "responsibility" in his memorialization of his agreement with Stern. The Code of Professional Responsibility sets forth guidelines for such a division in section DR 2-107, which section states in pertinent part:
 
 
 30
 "A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless: ....
 
 
 31
 2) The division is made in proportion to the services performed and responsibility assumed by each."
 
 
 32
 In a well reasoned opinion, the court in Carter v. Katz, Shandell, Katz and Erasmous, 120 Misc.2d 1009, 465 N.Y.S.2d 991 (Sup.Ct., Queens Co., 1983), discussed the "responsibility" requirement in an agreement to divide equally attorneys' fees with relation to ethical considerations. It held that, while Subdivision (2) of DR 2-107(A) governs the propriety of fee division, American Bar Association opinions and New York case law are also probative on the issue.
 
 
 33
 "The American Bar Association Committee on Professional Ethics has held that a mere recommendation is not a sufficient basis for a forwarding fee. There must be some sharing of work or responsibility. The services, however, may be rendered even merely by correspondence. (ABA Comm. on Professional Ethics, Opns. No. 97, 153.) Although the division must be based on sharing service and responsibility, the Committee refuses to measure the propositions thereof or to apportion the fees...."
 
 
 34
 Carter, supra, 120 Misc.2d at 1016, 465 N.Y.S.2d at 997 (emphasis in original).
 
 
 35
 The court then examined New York case law and determined that it comported with the guidelines set forth by the ABA Committee. We agree. We hold that the contract between Stern and Gerace likewise comports with DR 2-107(A)(2). The intent of the attorneys in the case now before us, as probably with most attorneys who work together on a case, was undoubtedly to have a fixed arrangement with respect to fees and a flexible understanding with respect to work, with the stipulated fee division to be controlling unless one of the attorneys, in effect, should breach his obligation to perform work on the case. Such an agreement is not in derogation of the Code of Professional Responsibility.
 
 III.
 To summarize:
 
 36
 We reverse the order of the district court dividing the fees on a quantum meruit basis, according to the proportionate amount of time each attorney contributed to the prosecution of the case. We hold that the parties entered into an express agreement to divide the fees equally. There was no breach of the contract. Fifty percent of the fee should be paid to Stern and fifty percent to Gerace, as the parties agreed.
 
 
 37
 Reversed and remanded.