OPINION OF THE COURT
Richard F. Braun, J.
This is an action for personal injuries due to plaintiff’s having slipped and fallen into the bathroom shower stall in her cabin on defendant’s ship in the Caribbean Sea in August 1980. Plaintiff was a passenger on the ship. As a result of plaintiff’s fall, she broke her coccyx and aggravated a quiescent osteoarthritis condition of her lumbar spine.
This action was tried before this court and a jury, and a verdict was reached on June 14, 1991 in favor of plaintiff in the amount of $38,200. Plaintiff’s prior motion to set aside the verdict as to damages was granted unless defendant were to stipulate to an increased amount of damages. Defendant did not so stipulate. Pursuant to this court’s order, and on consent, the new trial was limited to the issue of damages. Before this court and a new jury, a retrial was held as to damages, and the jury verdict was $508,600. The jury awarded plaintiff $192,000 for pain and suffering from the date of the accident to the date of the verdict; a total of $175,000 for future pain and suffering over 20 years; $81,600 for loss of earnings to the date of the verdict; and the sum of $60,000 for three years of future lost earnings.
Defendant now moves for a new trial. Plaintiff moves to have judgment entered, for prejudgment interest, and to have certain costs taxed. After an evidentiary hearing before this court, the parties have agreed that the verdict is reduced to $507,900.
Defendant asks in the affirmation in support of its motion that this court discount the jury award as to future pain and suffering, and future loss of earnings. Discounting of an award of future damages can take into account inflation, and the ability to receive the money now for the future and invest it. In violation of CPLR 2214 (a), defendant does not request in its notice of motion discounting of the jury’s award of damages for future pain and suffering, nor even have a standard request in the notice of motion for such other and further relief. Nevertheless, on December 22, 1992, an evidentiary hearing was held before this court, after the jury was discharged, at which plaintiff and defendant had economists *161 testify. Both economists agreed to the same discounting figure as to future lost earnings, which led to the agreed reduction of the verdict by $700. As to defendant’s request to discount the verdict as to future pain and suffering, that request is denied.
This is an action under general maritime law, and thus Federal law must be applied. (Pope & Talbot v Hawn, 346 US 406, 409-410 [1953]; Alvez v American Export Lines, 46 NY2d 634, 638-639 [1979], affd 446 US 274 [1980].) State substantive law cannot be applied, nor can State procedural or evidentiary rules if they "significantly affect the result of the litigation, i.e., would be outcome determinative” (citations omitted). (Matter of Rederi [Dow Chem. Co.], 25 NY2d 576, 581 [1970]; accord, Haggerty v Moran Towing & Transp. Co., 162 AD2d 189, 190-191 [1st Dept 1990].)
CPLR 4111 (f) provides that a jury in a personal injury action shall be instructed by the court that future damages must be awarded in full without any discounting for inflation. The jury was so charged here. Pursuant to CPLR 5041 (e), certain future damages awards in personal injury actions commenced on or after July 30, 1986 must account in an annuity contract for a 4% annual increase after a judgment has been entered in the amount of the present value of the annuity contract (this provision does not apply here because this action was commenced before that date, and for the reason stated infra).
However, discounting a jury award for future pain and suffering is outcome determinative. Thus, Federal law and not New York State law must be applied in order to determine if a jury award in a maritime action should be discounted because discounting could have a significant impact upon the result of the litigation. The concept of "significantly affect the result of the litigation” includes not only who will win the litigation but also, if the party asserting a cause(s) of action for damages is successful, how much he or she will be awarded.
At the posttrial evidentiary hearing, both parties’ economists testified that while testifying in prior court proceedings they had never been questioned about the discounting of a future pain and suffering award. Defendant’s economist conceded that generally economists do not value pain and suffering. Both economists agreed to a 1% figure for discounting of future pain and suffering, and that this figure would reduce the jury verdict by another $15,487. Although this may not *162 seem like a large figure, given the size of the verdict here, the more significant effect of discounting future pain and suffering awards can be seen in other cases adjudicated during times of higher inflation, which, given the cyclical nature of inflationary spirals, undoubtedly will return at some point. (See, e.g., Ursini v Sussman, 143 Misc 2d 727 [Sup Ct, NY County 1989, Gammerman, J.] [in a medical malpractice action, a 7Vz% discount factor was applied, in order to comply with the discounting required pursuant to CPLR 5031 (e), which is the medical malpractice action equivalent of CPLR 5041 (e)].)
Therefore, as discounting is outcome determinative, Federal law should be applied here. Under Federal law, discounting should be performed by the jury, not the court. (See, Oliveri v Delta S. S. Lines, 849 F2d 742, 751 [2d Cir 1988]; Yodice v Koninklijke Nederlandsche Stoomboot Maatschappij, 443 F2d 76 [2d Cir 1971]; see also, Monessen Southwestern Ry. Co. v Morgan, 486 US 330, 340 [1988] [action under the Federal Employers’ Liability Act].) No evidence was offered before the jury by either party as to discounting. Thus, the charge pursuant to CPLR 4111 (f) was appropriate because the jury had no evidence upon which to discount.
In any event, in a maritime case, an award for future pain and suffering should not be discounted. Although the Second Circuit has approved discounting for future pain and suffering (Matthews v CTI Container Transp. Intl., 871 F2d 270, 280-281 [1989]), it indicated in a recent pronouncement on the subject that it did so because of stare decisis in the circuit (although not all of its earlier holdings endorsed the concept), and that, if it were not bound thereby, it might have followed the various other circuits that reject such discounting. (Oliveri v Delta S. S. Lines, supra, 849 F2d, at 749-752, and citations therein.) In any event, where the United States Supreme Court has not ruled on such issue, and there is a disagreement among the circuits, this court is not required to follow the view of the Second Circuit, and will not do so on this issue, especially given the implied misgivings in Oliveri as to discounting for future pain and suffering. (Flanagan v Prudential-Bache Sec., 67 NY2d 500, 506 [1986].) Rather, this court will, for sound reasons, follow the majority rule of the other circuits, which have consistently ruled against such discounting. (See, e.g., Chicago & N. W. Ry. Co. v Candler, 283 F 881, 884-885 [8th Cir 1922].) Therefore, even if defendant had not waived its request to have the jury award for future pain and suffering discounted through its failure to present any evi *163 dence to the jury on the issue, under the prevailing Federal view no such discounting was appropriate.
Plaintiff moves to have this court include prejudgment interest in the judgment to be entered. In plaintiff’s initial motion papers, an award of prejudgment interest is requested from the date of the liability verdict in the first trial, which request was repeated in a subsequent letter by plaintiff’s counsel to this court. In his supplemental affirmation, plaintiff’s counsel for the first time apparently seeks prejudgment interest from the date of plaintiff’s accident.
The inclusion of prejudgment interest in a judgment is outcome determinative because it can have a significant impact on the size of the judgment to be entered (see, discussion supra). Thus, Federal law must be applied. (Escobar v Seatrain Lines, 175 AD2d 741, 745 [1st Dept 1991]; Robinson v Pocahontas, Inc., 477 F2d 1048, 1052 [1st Cir 1973]; Kotsopoulos v Asturia Shipping Co., 467 F2d 91, 94 [2d Cir 1972].)
Where a plaintiff prevails in a maritime action, the inclusion of prejudgment interest in the judgment is discretionary, although the general rule is that such interest should be awarded. (Escobar v Seatrain Lines, supra, 175 AD2d, at 745; Magee v United States Lines, 976 F2d 821, 822-823 [2d Cir 1992].) In a jury trial, some courts have held that this discretionary act must be exercised by the jury. (Petersen v Chesapeake & Ohio Ry. Co., 784 F2d 732, 740 [6th Cir 1986]; Havis v Petroleum Helicopters, 664 F2d 54, 55 [5th Cir 1982]; Robinson v Pocahontas, Inc., supra, 477 F2d, at 1053; Newburgh Land & Dock Co. v Texas Co., 227 F2d 732, 735 [2d Cir 1955].) However, the Second Circuit more recently affirmed the award of prejudgment interest by the Trial Judge after the jury rendered its verdict. (Stissi v Interstate & Ocean Transp. Co., 765 F2d 370, 377 [2d Cir 1985], affg in part 590 F Supp 1043 [ED NY 1984].) Although it is not clear whether the District Court there made its determination under admiralty law or general maritime law (cf., Stissi v Interstate & Ocean Transp. Co., supra, 765 F2d, at 377, with 590 F Supp, at 1049), the distinction is immaterial because in either event the parties’ "substantial” rights were the same. "[T]he substantial rights of an injured person are not to be determined differently whether his case is labelled Taw side’ or 'admiralty side’ on a district court’s docket” (citation omitted). (Pope & Talbot v Hawn, 346 US 406, 411, supra; accord, Larios v Victory Carri *164 ers, 316 F2d 63, 65 [2d Cir 1963]; Neal v McGinnis, Inc., 716 F Supp 996, 998 [ED Ky 1989].) A party’s right to prejudgment interest is a substantial one, given its potential effect on the amount of the judgment. In light of the conflict in the circuits, this court will follow Stissi’s approval of the trial court’s being permitted to exercise its discretion to award prejudgment interest after a jury verdict, especially where the determination of the amount of interest is essentially a mathematical calculation that can be made by the Trial Judge after the jury verdict.
Although Stissi (supra) permitted prejudgment interest back to the date of the original incident, this court will only award interest from the date of the first trial’s liability verdict. That was the request of plaintiff in her original motion papers, and she thereby waived any right to such interest from an earlier date. Although it is Federal law under which the request for prejudgment interest must be determined, the result is consistent with New York State law. Where a trial is bifurcated, and a liability verdict is found for a plaintiff, the judgment based on a subsequent damages verdict will include interest from the date of the liability verdict. (Love v State of New York, 78 NY2d 540, 544 [1991].) The same rule should apply to a verdict in a retrial on damages only.
Plaintiff seeks a rate of prejudgment interest of 9%, equivalent to that of CPLR 5004. Defendant opposes the granting of prejudgment interest, but points out that the current interest rate for United States Treasury bills is much lower than 9% and cites to 28 USC § 1961 (a) which sets postjudgment interest rates by the Treasury bill rate. In setting the prejudgment interest rate, in a case such as this, it is well settled that a trial court has the discretion to set the rate, and is not bound by a State’s interest rate. (United States v Peavey Barge Lines, 748 F2d 395, 402, n 15 [7th Cir 1984]; Edinburgh Assur. Co. v Burns Corp., 669 F2d 1259, 1263 [9th Cir 1982]; Ameejee Valleejee & Sons v M/V Victoria U., 661 F2d 310, 313-314 [4th Cir 1981]; Federal Barge Lines v Republic Mar., 616 F2d 372, 373 [8th Cir 1980]; Kotsopoulos v Astoria Shipping Co., 467 F2d 91, 94 [2d Cir 1972], supra; United Brands Co. v Mutual Mar. Off., 117 Misc 2d 507, 509 [Sup Ct, NY County 1983, Cahn, J.].) As other courts have done, this court will exercise its discretion to set the prejudgment interest rate at the average rate of Treasury bills from June 14, 1991 to the *165 present date at 4.267%.* (See, McCrann v United States Lines, 803 F2d 771 [2d Cir 1986]; United States v Peavey Barge Lines, supra, 748 F2d, at 402, n 15.) Plaintiff concedes that the award of prejudgment interest does not apply to the future damages awarded by the jury.
Plaintiff requests that $2,944 "costs” be awarded to her. This includes $400 for the taking of a videotape deposition, $156 for the transcription thereof, $115 for the editing thereof, $1,365 for the video technician’s fee for court appearance time, $255 and $110 for the costs of the transcripts of the testimony of two witnesses at the first trial, and $378 for plaintiff’s one-half share of the cost of daily copy of the testimony of one of the witnesses who appeared at the second trial.
The relative amount of costs or disbursements in an action is usually not sizable. Furthermore, costs and disbursements are merely incidental to the outcome of the litigation. Thus, costs and disbursements are not outcome determinative, and therefore New York State law will be applied to determine plaintiff’s request.
Defendant’s motion is denied. Plaintiff’s motion is granted to the extent of directing that the clerk of this court shall *166 enter judgment in favor of plaintiff against defendant in the amount of $507,900, plus prejudgment interest from June 14, 1991 at the rate of 4.267% on $273,600, costs, and disbursements in the amount of $2,146.

 After the trial, the court informed the parties that it was taking judicial notice of the rate table of changes in the equivalent coupon issue yields of United States Treasury bill auctions (Rate Table). (See, Fed Rules Evid, rule 201 [b] [2]; [c]; United States v Peavey Barge Lines, 748 F2d, at 402, n 15, supra [7th Cir 1984]; cf., Matter of Cohn, 158 Misc 96 [Sur Ct, Kings County 1936] [the court took judicial notice that trust investments rarely yield a return as high as 5%].) The parties declined the opportunity to submit any countervailing evidence on this point. (Fed Rules Evid, rule 201 [e].) The 4.267% figure is an average taken from the figures in the Rate Table. From June 27, 1991 through May 27, 1993, there are 26 auction dates on the Rate Table. Their percentages total 110.10%. The percentage from the Rate Table for the May 30, 1991 auction is 6.09%. As the prejudgment interest award is from June 14, 1991, there were 13 days at the 6.09% interest rate until the rate changed on June 27, 1991. There were 28 days from May 30, 1991 through June 26, 1991, the day before the next auction. The percentage for 13 days out of 28 days is 46.43%. 46.43% times 6.09% for the period from June 14-26, 1991 equals 2.83%. The total of the percentages from June 14, 1991 through May 27, 1993 is 112.93% (110.10% plus 2.83%). As the end of the current month is near, and thus a new auction would normally be held soon (the date is not in the current Rate Table, and thus a new auction date cannot be accounted for), almost a full period will have passed for the interest rate which was set on May 27, 1993. Therefore, the total number of periods is approximately 26.4643 (approximately 26 full periods plus the 46.43% of the period from May 30,1991 through June 26,1991). The total of 112.93% divided by 26.4643 periods gives an average of 4.267% over the total period from June 14,1991 to date.